Merrimack, }
June 30, 1902. }

### PARKER & a.  v.  CONCORD & a.

The city council of Concord have authority to purchase land and erect thereon a building containing a public hall for municipal purposes, and, in the exercise of legislative discretion and within the limits of good faith, to determine the cost thereof.

An information in the nature of *quo warranto* is the appropriate proceeding by which to restrain an unlawful exercise of public functions.

A bill in equity by taxpayers to restrain the further prosecution of work upon a municipal building is barred by laches of the complainants, when the acts sought to be enjoined are within the power of the city, and the only available objection is to the method of procedure.

BILL IN EQUITY, brought by taxpayers and citizens of Concord, praying that the city, certain officers thereof, and the bodies known as the building committee and the finance committee be restrained from proceeding with the erection of a city building, and from issuing notes or bonds of the city to pay for the same. Facts found, and case transferred from the April term, 1902, of the superior court, by *Peaslee*, J.

January 22, 1901, the city council of Concord adopted a resolution providing for the appointment of a committee to obtain such legislative authority as might be necessary " to enable the city to make such arrangements as may seem best with the county of Merrimack with regard to the property owned jointly by the city and the county, and to secure suitable land and buildings for the various city offices." The committee was appointed, and the legislation was obtained. Laws 1901, *c.* 245. March 21, 1901, the county convention adopted a resolution providing for a committee to negotiate with the city as to the building owned jointly by the city and county, and on October 10, 1901, voted to buy the city's interest in the building for the sum of $20,000.

November 12, 1901, a resolution was adopted by the city council ratifying the sale to the county, and providing for a committee consisting of the mayor, the president of the common council, four members of the board of aldermen, and three members of the common council, " appointed for the purpose of taking steps toward the selection and acquirement of a suitable site on which to erect a new city building, . . . and also to procure plans and estimates of the expense for the erection of such building." By the resolution, the committee were authorized and instructed to procure a suitable site, to employ architects to furnish plans and supervise construction, and to make in the name of the city such

contracts as in their judgment should seem reasonable for the erection and furnishing of the building, and were empowered to expend in behalf of the city for these purposes a sum not exceeding $130,000, in addition to the sum received from the county for the city's interest in the old building. The resolution further provided for an issue of bonds of the city by the finance committee of the city council, in a sum not exceeding $130,000, as a majority of the building committee should request in writing, upon such time and at such rate of interest, not exceeding three and one half per cent per annum, as might seem advisable to the finance committee.

In December, 1901, a large number of citizens entered a written protest against the proposed action. December 20, a public hearing was had before the city government; and December 31, the city council adopted an amendment to the resolution of November 12, providing that there should be included within or connected with the new building "a city hall capable of seating from 1,600 to 2,000 people, constructed on the ground floor." January 14, 1902, the resolution of November 12 was further amended by adding five citizens to the building committee, providing that five members should constitute a quorum, and stipulating that no member should receive compensation for his services. Each resolution was published in the Concord newspapers immediately after its adoption.

The building committee was duly appointed, met for organization on January 18, 1902, and proceeded with reasonable dispatch to consult an architect, examine available locations, and purchase a site. March 25, 1902, they agreed upon a site and appointed a sub-committee, who, acting under authority conferred upon them by the full committee, purchased certain lots for $24,100. No subsequent action was taken by the building committee with reference to the purchases by the sub-committee up to the time of the trial. The finance committee notified the city treasurer of the transactions, and the purchase price of the site was paid by the city before April 1, 1902.

March 31, 1902, the plaintiffs' counsel wrote a letter to the mayor of the city, expressing doubts as to the legality of the proposed issue of bonds and the building of a hall to be used for purposes other than those purely municipal, and suggesting that a decision by the supreme court be obtained. The mayor replied by letter the same day, defending the proposed action, but adding that there was no disposition on his part to issue unenforceable obligations of the city, and that in any suit brought by the plaintiffs the city would "cheerfully co-operate to obtain a speedy decision by the court."

The bill was filed April 3, 1902, the city solicitor appearing and consenting to the issuance of a temporary injunction. The defend-' ants' answer, setting up laches, was filed April 10. A hearing was had upon the bill and answer, and the court found that none of the defendants intend to build except in accordance with the resolution of November 12, 1901, and the amendments thereto; that an expenditure of several hundred dollars has been made for preliminary sketches, etc.; that proposals to architects, embodying the ideas of the building committee and conforming in all respects to the requirements of the amended resolution, were prepared by a sub-committee, and action thereon was prevented by this proceeding; that the price paid for the site was reasonable, there being no other demand for the lots except for the erection of tenement houses, and for such use they would not command so high a price by twenty per cent; that the delay in filing the bill was unnecessary, unexplained, and unreasonable, and constitutes such laches as to bar the plaintiffs from now complaining of the execution of the project, or objecting to the agencies employed for that purpose. The prayer for an injunction against proceeding with the erection of the building was denied.

The plaintiffs requested the court to find and rule: (1) that the plaintiffs' laches were waived by the defendants; (2) that because the bill was brought by invitation of the mayor, with the subsequent approval of the city council, for the purpose of having a hearing upon the merits and obtaining an authoritative decision of doubtful questions of law for the benefit of the city, the city council, the building committee, and citizens, the defence of laches is not available and cannot be set up. The court found that there was no waiver of the defence of laches, and denied the request.

No steps having been taken toward the issuance of bonds, the court ruled that as to that question the plaintiffs' laches did not constitute a defence. The defendants were enjoined from issuing bonds of the city to defray the cost of the proposed building until the issue should be authorized as follows: If it is made under the power conferred by the Public Statutes, it shall be only to pay existing debts and upon votes of the city council prescribing all the terms of the bonds, as set forth in section 17, chapter 40; if it is under the municipal bonds act (Laws 1895, *c.* 43), all the terms shall be fixed by the city council, by a two-thirds vote of all the members elected to each branch thereof, except that the discretion of fixing the rate of interest and place of payment may be delegated to the city treasurer.

To the foregoing findings, rulings, and orders the plaintiffs excepted.

*Streeter & Hollis, Mitchell & Foster,* and *Samuel C. Eastman,* for the plaintiffs.

*Edmund S. Cook, Eastman & Hollis,* and *Martin & Howe,* for the defendants.

REMICK, J.   The bill of rights (*art.*3 2), the Public Statutes (*c.* 40, *s.* 4; *c.* 50, *s.* 5), the city charter of Concord (Laws 1849, *c.* 835, *s.* 18), judicial decisions here and elsewhere (*Eastman* v. *Meredith,* 36 N. H. 284, 300, 301; *Bates* v. *Bassett,* 60 Vt. 530; *Stetson* v. *Kempton,* 13 Mass. 272, 279; *Willard* v. *Newburyport,* 12 Pick. 227, 230; *Spaulding* v. *Lowell,* 23 Pick. 71, 76, 80; *French* v. *Quincy,* 3 Allen 9, 13; *Minot* v. *West Roxbury,* 112 Mass. 1,—17 Am. Rep. 52, 55; *Torrent* v. *Muskegon,* 47 Mich. 115,—41 Am. Rep. 715, 717, 718, 719), leading text-books upon the subject (Dill. Mun. Corp., *s.* 30 and notes), the theory and necessities of local self-government, and universal custom and usage under municipal charters, all support and establish the authority of the city council of Concord to purchase land and erect thereon a city building, including a city hall, for municipal purposes.

The fundamental question of municipal power being settled, it only remains to consider whether there is anything in the purpose for which, or the manner in which, the power is being exercised in the present case that entitles the plaintiffs to the interposition of equity by way of injunction, further than the order already made respecting the issuance of bonds.

In the first place, it is urged that the defendants should be restrained from proceeding further because the real intention is not to build a city building and auditorium for municipal purposes, but, under color of such purposes, to erect " an opera house to be let to dramatic companies and others for purposes of entertainment."   As to this contention, it is only necessary to say that the resolution of the city council, which is the source of the defendants' authority, in terms provides for a " city hall," or, what is the same in legal effect, a hall for municipal purposes.   Furthermore, the court finds that " none of the defendants intend to build except in accordance with the resolution."

Next, it is urged that the defendants should be restrained because the sum proposed to be expended is unreasonable.   The bill presents no case for judicial interference upon this ground. The right to determine the cost of the building is vested in the city council as a matter of legislative discretion.   So long as they proceed in good faith the court cannot interfere.   Bad faith is

negatived by the findings of the court. Dill. Mun. Corp. (3d ed.), *s.* 94; 20 Am. & Eng. Enc. Law 1229, 1230; *Blood* v. *Company,* 68 N. H. 340, 342, 343; *Bates* v. *Bassett,* 60 Vt. 530; *Dibble* v. *New Haven,* 56 Conn. 199; *Torrent* v. *Muskegon,* 47 Mich. 115,— 41 Am. Rep. 715; *Des Moines Gas Co.* v. *Des Moines,* 44 Ia. 505,— 24 Am. Rep. 756, 758.

It is further insisted that the defendants should be restrained because the powers they threaten to exercise are vested by law in the city council, and are not delegable. An information in the nature of *quo warranto* is the appropriate proceeding by which to determine this question. *Brown* v. *Reding,* 50 N. H. 336, 349; *Osgood* v. *Jones,* 60 N. H. 543. Moreover, if the defendants are without authority, what they may do, until ratified, will create no municipal obligation, and so be harmless as to the plaintiffs. If ratified by the city council, the acts of the committee will become the authorized acts of the city and binding upon the plaintiffs. In either view, the plaintiffs have no standing in equity. *Dibble* v. *New Haven,* 56 Conn. 199.

In addition to the reasons already suggested why the prayer of the plaintiffs should not be granted, is their "unnecessary, unexplained, and unreasonable" delay in filing their bill, which delay the superior court has found, and we are of the opinion, constitutes laches. The plaintiffs contend that their laches have been waived. The superior court has found otherwise, and we think rightly.

Whatever may be said in favor of a right, notwithstanding past laches, to restrain the further prosecution of something wholly unauthorized, there would seem to be no reason why the doctrine of laches should not apply with full force where, as in the present case, the acts sought to be enjoined are within the power of the city, and the only available objection is to the method of procedure. *Chamberlain* v. *Lyndeborough,* 64 N. H. 563, 564, were it to be limited according to the contention of the plaintiffs, would still be decisive against them, upon the facts of the present case.

But while upon the facts alleged in the plaintiffs' bill, which are assumed to be true except so far as modified or contradicted by the finding of the court, the plaintiffs are not entitled to the relief sought, they are not precluded by their delay or laches in bringing this bill from making a new application for an injunction to restrain the defendants from the performance of future illegal or unauthorized acts in the erection of the proposed building. If, ostensibly acting under the resolution which empowers them to build a city hall building, they shall change their present purpose, and shall attempt the erection of a different building, or shall otherwise assume authority in the premises which is not

sanctioned by a reasonable construction of the city's powers, an ample remedy will be afforded in an appropriate proceeding.

*Exceptions overruled.*

CHASE, J., did not sit: the others concurred.