No. 13,822.

H. L. SHAFFER AND COMPANY v. PROSSER AS ATTORNEY GENERAL.

(62 P. [2d] 1161)

Decided November 2, 1936.   Rehearing denied December 7, 1936.

Mr. HAROLD G. KING, Mr. CHARLES A. MURDOCK, for plaintiff in error.

Mr. PAUL P. PROSSER, Attorney General, Mr. WALTER F. SCHERER, Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE BURKE, sitting for MR. CHIEF JUSTICE CAMPBELL, delivered the opinion of the court.

PLAINTIFF in error is hereinafter referred to as the Shaffer company, defendant in error as Prosser, and the United States Bond Company as the bond company.

Prosser revoked the license of the Shaffer company as a dealer in securities. The district court sustained that action and to review its judgment this writ is prosecuted.

Prior to October, 1930, Shaffer was president and manager of the bond company and for a considerable time thereafter was a member of its board of directors, and was, and is, in control of the Shaffer company. For all the purposes of this cause he was these respective companies and we so consider him.

The license in question was issued under the provisions of chapter 95, page 352, Session Laws 1931. Section 3 thereof, page 355, provides for its issuance by the secretary of state, and by section 5, page 358, of the same act it might be cancelled by the same officer. These powers and duties were transferred to the attorney general by paragraph 2, section 13, article V of chapter 37, page 222, Session Laws 1933. These provide that the officer must find that the applicant for a license "is of good business repute," and that a license once issued may be revoked if it is shown that the licensee "is not of good business repute."

February 14, 1934, the Shaffer company, on said Shaffer's application, was issued a license, and about one year later a hearing was had before Prosser to determine whether the license should be revoked because the company "was not of good business repute." Notice of hearing was addressed to Shaffer, not the Shaffer company, and he responded and defended. The principal fact there established, and upon which the license was cancelled, was that the bond company, during Shaffer's said connection with it, contracted for the refund of certain bond issues and sold refunding bonds without redemption of the originals, thus imposing upon clients a double liability and a corresponding loss. There is no evidence of Shaffer's personal participation in the sales of these bonds or his personal profit from them.

The contentions here are: (1) That the evidence is insufficient because it went to the reputation of Shaffer individually, and because it rested upon particular transactions of the bond company; (2) that the act is unconstitutional.

1. The reputation of one who controls a company, partnership or corporation, or is generally understood and believed to exercise such control, and the reputation of his concern, are inseparable. A man's character is the thing he is, his reputation the thing others say of him; but "repute," "reputation," and "character" are words often used in ordinary conversation and writing, as well as in legislation, and all too frequently in court decisions, very carelessly. Context and intent must generally be resorted to in their interpretation. When we speak of "a man of good repute," or "a reputable citizen," we usually refer to one who is well spoken of by his neighbors and hence presumably of good character. But those phrases would not likely be used with reference to one who was generally presumed by his neighbors to be a man of probity, but whom the speaker knew to be a scoundrel. Nor is it conceivable that a certificate of "good repute" would be issued to an applicant under

our statute merely because he had theretofore stood well in his community, in the face of a protest by a district attorney who imparted the information that the applicant had just been indicted for a vast securities fraud, and presented evidence conclusively showing him guilty thereof. Neither do we believe that such construction was intended by the legislature, or is compelled by the letter of the law. Even the dictionaries give as one definition of the word "reputable," "worthy of good repute," and as one synonym of "reputation," the word "honor." Moreover, one definition given by them of the term "character" is "the estimate, individual or general, put upon a person or thing." See Webster and other dictionaries, and "Words and Phrases." A law which prohibits the issuance of a security dealer's license to one not of "good repute," and the cancellation of such license theretofore issued to such person, being clearly an act for the protection of the public, must contemplate as one "not of good repute" a person of such character that he cannot, with reasonable safety, be trusted in such matters. This may be shown either by general reputation in the community, or among those personally familiar therewith, or evidence or transactions presumably revealing his character. No other construction will read life into the statute. Hence the objections that on the hearing specific instances and hearsay were considered are wholly without merit. The same is true of the objection that these instances, or this "repute," related to a time prior to the passage of the act; otherwise, one who a few days before its approval had been released from the penitentiary at the close of service of a sentence for a securities fraud, could bar evidence thereof in a hearing to determine his "good repute," on his application for a security dealer's license. We cannot thus construe common sense out of legislation intended for public protection when, as here, its terms are capable of a construction in harmony with that intent, however loose the language or inartificial the phrases.

■ 2. It is contended that the act of 1931, because of defective title, violates section 21 of article V of the state Constitution which provides that no bill shall be passed "containing more than one subject, which shall be clearly expresesd in its title." Here the title is, "An act relating to fraudulent practices in respect to stocks, bonds and other securities," and the point presented is that this gives no hint of licensing. In support of their position counsel rely upon *In Re Breene,* 14 Colo. 401, 24 Pac. 3, and other Colorado cases. With none of these do we disagree. However, so varied is the practice of entitling legislative acts, and so divergent the questions raised under said section 21, that adjudicated cases are rarely helpful save as they announce broad general principles. Perhaps the latest and most enlightening here is *Driverless Car Co. v. Armstrong,* 91 Colo. 334, 14 P. (2d) 1098. Therein we reiterated the general rule that "particularity is neither necessary nor desirable; generality is commendable." We further said that if the legislation "is germane to the general subject expressed in the title; if it is relevant and appropriate to such subject, * * * it does not violate this provision of the Constitution." Tested by these rules, as well as by others laid down by the adjudicated cases in this jurisdiction, we doubt not this title is sufficient.

The judgment is accordingly affirmed.

Mr. Chief Justice Campbell not participating.

Mr. Justice Holland dissents.