No. 19,410.

CITY AND COUNTY OF DENVER, ET AL. *v.*
L. MEWBORN, ET AL.
(354 P. [2d] 155)

Decided July 11, 1960.

408

Mr. Donald E. Kelley, Mr. Earl T. Thrasher, Mr. Hans W. Johnson, for plaintiffs in error.

No appearance for defendants in error.

*En Banc.*

Mr. Justice Doyle delivered the opinion of the Court.

This case poses the issue of the validity of an amendment to the charter of the City and County of Denver adopted May 24, 1955, by a substantial vote of the people. It deals with the regulation and support of parks and improvements in the city. The basis of the challenge to the amendment is the contention that the title of the amendment, as submitted to the citizens of the city, contained reference to several unrelated subjects.

Defendants in error, plaintiffs below, brought this ac-

tion for themselves and for all other persons similarly situated and sought to enjoin the continued operation of Park Improvement District No. 51 which had been organized under the terms of the charter amendment referred to above. The park sought to be created consisted of approximately ten acres in southeast Denver. The complaint contained two claims. The first of these alleged that in the creation of Park Improvement District No. 51 the required procedural steps had not been observed, that the proposed improvement was neither a local public improvement nor a benefit and that the assessment of the property of plaintiffs would deny them equal protection of the law and would be without due process of law. The sufficiency of the second claim, which alleged that the charter amendment under which the district was formed was contrary to sections 216 and 268 of the city charter and contrary to section 5 of Article XX of the Colorado Constitution, is here in issue.

The trial was commenced to the court on July 20, 1959. The court heard argument on the questions of law for several days and on July 27, 1959, announced its ruling from the bench and gave judgment to the plaintiffs on their second claim. On July 28, 1959, the court ordered the judgment of the previous day vacated, entered judgment for plaintiffs on both their first and second claims, and requested plaintiffs' counsel to submit a written decree. On July 29, 1959, the court signed a written judgment and decree nunc pro tunc as of July 28, 1959. Thereupon the defendants and intervenors filed motions for a new trial and motions to alter and amend the judgment. On December 5, 1959, the court denied the motions for a new trial and delivered a lengthy amended written opinion setting forth in some detail the reasoning upon which its decision was based. It held that the ordinance submitting the proposed charter amendment to the people contained three propositions, none of which was germane to the others; that the amendment therefore contravened sections 5 and 6 of

Article XX of the state constitution and sections 216 and 268 of the charter of the City and County of Denver. Plaintiffs in error seek a reversal of this ruling. The only brief before us is that filed by the defendant City, but we note that the lengthy opinion of the trial court contains an able statement in support of the position of plaintiffs. The parties will be referred to as they appeared in the trial court or by name.

The City makes the following contentions in urging error on the part of the trial court:

1. Section 216 of the charter applies only to "ordinary legislation" and has no relevancy to charter amendments.

2. Article XX, section 6 (f) of the state constitution applies only to that form of service district created by statute and having a separate existence as a political entity, but has no relevancy to park improvement districts such as are involved here because they are merely geographical divisions created for convenience of administration.

3. Section 268 of the charter and Article XX, section 5 of the state constitution do not establish a requirement that the title of a charter amendment may contain but one object or subject. Even if such a requirement exists, the title of the amendment in question contains only one subject and complies with all requirements of the charter and constitution.

4. Even if a formal defect existed in the amendment, the continued de facto existence of the program should prevent a holding that such defect voids action taken under the amendment.

It is not contended that the ballot title inadequately describes the several subjects contained in the amendment. The basis of the trial court's decision was that the ballot and the body of the amendment invalidly combined three distinct unrelated subjects. That failure to separate: (a) creation of two departments (Parks and Recreation, and Public Works); (b) Special Assess-

ments, and (c) Power of Eminent Domain, resulted in the amendment being invalid and void. The correctness of this ruling is determinative of the questions presented.

In order to present an accurate picture of the subjects covered by Article III of the charter as it existed before 1955 and the subjects included after the comprehensive amendment of 1955, it is necessary to give the history and character of the article in some detail. Article III was adopted in 1904 and amended in 1916. It was titled "Department of Improvements and Parks" and comprised a large number of sections numbered from 14 to 97. Originally authority over improvements and parks was vested in a board of public works. The 1916 amendment replaced the board of public works with a department of improvements and parks headed by a manager of improvements and parks. Reference to the board found elsewhere in Article III, however, was retained throughout even though the board was amended out of existence in 1916. The duties and powers of the department (or board) were spelled out; these included the letting of contracts; bond sales, and the spending of appropriations. There were elaborate provisions for creating paving districts and the assessment of costs therefor. Public improvement bonds were provided for. Special sections dealt with sidewalks, sewers, viaducts, and tunnels. The power of eminent domain to take land for streets and alleys and markets, auditoriums and other public buildings was conferred in section 80. A bureau of engineering and surveying was set up under the board of public works. Sections 84 to 97 dealt with parks and parkways. A park commission (taken over in 1916 by the department of improvements and parks) was given broad authority to regulate the park system. Four park districts were created. Power was given to finance the acquisition of parks either by the sale of general bonds of the city, the proceeds of which were to be apportioned among the four park districts in proportion to the as-

sessed valuation of the real estate in each district, or by assessment on property within a district, or partly by bonds and partly by assessment. A one and one-third mill levy for improvement and maintenance was provided in section 90. Special assessment was provided for acquisition of parks in each district. The commission was given the power of condemnation to acquire park land, and provision for park bonds was made. An intricate preliminary procedure for the issuance of bonds, such as complaints, notice, and remonstrance was set up.

By 1955 Article III was considerably outdated and some of the offices and departments referred to therein, as we have noted above, were no longer in existence. To streamline the operation of the city government in the area of public improvements and parks, the city council passed an ordinance calling for the submission to the electorate of an amendment to replace Article III. The ordinance called for the submission of the amendment with the following language to be on the ballot as its title:

"Amendment No. 3. Amending Article III of the Charter; terminating the Department of Improvements and Parks, dividing certain functions and powers of that department between two new departments, namely, the Department of Public Works and the Department of Parks and Recreation; establishing procedures for the creation of local public improvement districts and all proceedings relating thereto; vesting and defining the power of eminent domain."

The amendment repealed Article III in its entirety and substituted thirty-seven new sections. These were divided into four titles, Department of Public Works, Department of Parks and Recreation, Eminent Domain, and Local Public Improvements. Under the Department of Public Works, a department head titled the "Manager" (who was made the successor to the Mayor) was created, and the department was given full power over the design, planning, construction and reconstruction of

all general public improvements. It was given the power to let contracts, impose conditions thereon, and to operate all city-owned utilities and facilities. The collection of trash, etc., the regulation of approaches to railroad tracks, and control over the functions of the county surveyor were also included.

The Department of Parks and Recreation was established. The department was given full control over parks and parkways, including power to enter cooperative agreements with the Denver school district. The provisions for Eminent Domain were consolidated into three sections which vest the general power to condemn property for public use in the council to be exercised by ordinance, and provide that the procedure to be used "shall be as provided by general law." The title relating to Local Public Improvements consists of twenty-five sections. It does away with the specific park districts provided for in the old section 91, and deals with all improvement districts generally. It gives the city the power to make local public improvements and to assess the cost wholly or in part upon the property especially benefited. It provides for the manner in which contracts are to be let, and provides for the procedure, including publication, notice, and remonstrance, to be used where the cost of the improvement is to be assessed wholly or in part upon the property benefited, when the improvement may be initiated without petition and when a petition is required. The Manager of Revenue is authorized to issue local public improvement bonds on the order of the Manager of Public Works and with the approval of the Mayor, such bonds to be payable out of assessments. Section 24 carries over from the former Article III a ninety-day period of limitation on actions relating to public improvements. Defendants in their answer asserted this provision as a defense.

The above summary and comparison demonstrates the substantial similarity of subject matter as between the old provision and the amendment of 1955. Essentially,

the Council sought to reorganize and streamline this area of city government. The 1955 amendment effects procedural changes and eliminates obsolete provisions, but it is apparent that the main effort was to create two departments as substitutes for a Department of Parks and Improvements which had grown large and unwieldy. It cannot be said, however, that the subject matter treated in the old provision and the new amendment is substantially different.

These general observations lead us to a consideration of the specific issues presented.

First: *Does the Constitution of Colorado impose a requirement that an amendment to the Charter of a home rule city be limited to a single subject or proposition?*

Surprisingly the Court has not heretofore decided whether there is a general constitutional prohibition against combining two unrelated propositions in one proposed amendment to the charter of a home rule city. The question was avoided in two cases where the Court chose the route of holding the elements of the proposed amendment to be related or dependent. *Cook v. City of Delta,* 100 Colo. 7, 64 P. (2d) 1257; *People ex rel. Moore v. Perkins,* 56 Colo. 17, 42, 137 Pac. 55. It is clear, though, that where the several propositions are related and deal with subjects within the power of the municipality there is no constitutional objection to such an amendment, even though it is multi-purposed. *Cook v. City of Delta,* supra; *People ex rel. Moore v. Perkins,* supra. And it is equally clear that there is no limitation on the number of subjects that may be included in a constitutional amendment. *People ex rel. Elder v. Sours,* 31 Colo. 369, 74 Pac. 167. There have been, on the other hand, instances where this Court has held a charter amendment invalid because it comprised too many nongermane subjects. *City of Denver v. Hayes,* 28 Colo. 110, 63 Pac. 311; *People ex rel. Walker v. Stapleton,* 79 Colo. 629, 247 Pac. 1062. Both of these cases, however, appear to have been regarded as exceptional, the one dealing

with the combination of several bond issues and the other constituting an attempt to remove and replace elective officials by the amendment procedure, and have not been regarded in subsequent cases as establishing a general constitutional bar to multiple subjects in a charter amendment. *Cook v. City of Delta,* supra; *People ex rel. Moore v. Perkins,* supra, at 42. The Court, in *Nesbit v. People,* 19 Colo. 441, 36 Pac. 221, pointed out the distinction between legislative and constitutional or organic law making, and made it clear that limitations on the former do not apply to the latter. The charter here is analogous to the state constitution in *Nesbit;* any limitation on the power to amend the charter must be found in a specific provision of either the constitution or the charter. This point was recognized in *People ex rel. Walker v. Stapleton.* At p. 633 of that opinion the Court found the constitutional objection to multiple subjects in an amendment to the charter of a home rule city in the language of Article XX which refers to "a charter amendment." The holding in *City of Denver v. Hayes,* supra (decided before the Home Rule Amendment) was based on Article XI, Section 8 of the constitution, which is a specific provision dealing with the power of municipalities to incur indebtedness.

Article XX, Section 5 provides in part as follows:

"It shall be competent for qualified electors in number not less than five percent of the next preceding gubernatorial vote of said city and county to petition the council for any measure, or charter amendment, or for a charter convention."

The 1950 amendment which authorizes Council to submit measures to the voters uses the same singular form, that is, "amendment."

From the fact that the reference in Article XX, Section 5 of the constitution is to "amendment" in the singular, it was observed in *People v. Stapleton,* supra:

"Article XX, in providing for the submission of 'an amendment' does not permit the submission, as such, of

'many amendments.' If more than one be submitted the voter must be enabled to approve or reject them separately, otherwise the will of the electorate cannot be ascertained."

■ Should this provision be read so as to prohibit more than one subject within a single amendment such as in the case at bar? We think not. The constitutional provision is not one of limitation, and no reason is apparent for attributing such a strained meaning to it.

In evaluating *People v. Stapleton* as an authority and also *Howard v. City of Boulder,* 132 Colo. 401, 290 P. (2d) 237, it is well to remember that in each of these cases an effort was being made to vote officials out of office and others into office under the guise of amending the charter. These cases actually stand for the proposition that such efforts are invalid. Also in each of them the ballot titles were held to be inadequate. They can not be regarded as authority for the proposition that several subjects can not be constitutionally included within a single charter amendment. A correct evaluation of *Stapleton* is found in *Cook v. City of Delta,* supra, wherein the distinction which is fully relevant at bar was made:

" * * * In making their contention counsel have fallen into a fallacy similar to that stated in the Stapleton case, supra, in which it was said: 'The fallacy of the theory lies in its failure to distinguish between legislation and election, between form of government and official personnel. Under the American system, deeply rooted in state and federal Constitutions, laws are enacted, officials are elected or appointed. * * * Official personnel and form of government being separate and distinct, voters are entitled to an opportunity to accept the one and reject the other.'

"Both the power to acquire a light and power plant and to finance the same by revenue bonds are, as we have pointed out, conferred upon charter cities by article XX of the Constitution. If the amendment may be said

to contain two propositions, both are related to fundamental policies of government with respect to a specific public utility. We know of no restriction, constitutional or otherwise, to prevent a city providing by charter that its public policy shall be such as results from the concurrent application of two related propositions either or both of which it has the power to adopt and apply. The manner of payment is so clearly related to the manner of acquisition as to necessitate its consideration as an incident to, or a means of, making the mandate to acquire, effective."

Second: *Does the charter amendment offend against any provision of the charter of the City and County of Denver?*

The trial court based its ruling in part on Sections 216 and 268 of the charter of the City and County of Denver.

Section 216 provides:

"Council — Act by ordinance and resolution — When and how passed — Publication.

"The council shall act only by ordinance in matters of legislation, contracts, appropriations or expenditures of moneys; and by ordinance or resolution in other matters.

"All ordinances or resolutions, except ordinances making appropriations, shall be confined to one subject, which shall be clearly expressed in the title. If any subject shall be embraced in any ordinance which shall not be expressed in the title, such ordinance shall be void only as to so much thereof as shall not be so expressed. Ordinances making appropriations shall be confined to the subject of appropriations. No ordinance shall take effect until published in some newspaper of general circulation published in the city and county, or in book or pamphlet form, by authority of the council. The manner of publication shall not be changed after the beginning of the fiscal year.

"No bill or resolution shall be passed until after the expiration of one week from and after the introduction

of the same, nor until one publication thereof shall have been made. Any amendment altering the same shall be published in like manner before final action thereon.

"No ordinance shall be revised or amended, or the provisions thereof extended or conferred by reference to title only. So much thereof as is revised, amended, extended, or conferred, shall be re-enacted at length."

■ With respect to this section the City contends that it has application only to ordinary legislative enactments. A careful reading of the section convinces us that this contention is correct. The first sentence of Section 216 describes the type of ordinance referred to — "matters of legislation, contracts, appropriations or expenditures of moneys." These are the ordinary daily business of a city council. In addition, there is the fact that the subject of amendment of the city charter is dealt with in a comprehensive fashion elsewhere in the charter. Section 271 of the charter provides that a charter amendment "may be submitted to a vote of the qualified electors in the manner provided by the constitution." The constitutional provisions relating to the amendment of charters of home rule cities is found in Article XX, section 5; it provides that a charter amendment may be initiated either by a petition signed by qualified electors in number not less than five percent of the next preceding gubernatorial vote, or by an ordinance passed by the council. Thus from the language of Section 216 and its context within the charter we see no logical reason for incorporating the restrictions of this section into the charter amendment machinery, and we hold that Section 216 bears no relation to the present problem.

The other provision of the charter considered by the trial court as applicable is Section 268, which reads as follows:

"Questions submitted to popular vote — Form of ballot, etc.

"At any election at which any measure, charter

amendment, proposal for a charter convention or ordinance, shall be submitted to a vote of the qualified electors, the official ballot shall, by proper words to be provided by ordinance, show the nature of the measure, charter amendment, proposal for a charter convention or ordinance, to be voted upon, and shall give to each voter the right to place a cross mark upon his ballot showing clearly his intention to vote for or against said measure, charter amendment, proposal for a charter convention or ordinance, and in case any separate or alternative proposition or propositions be submitted, the ballot shall be prepared so as to enable the voter to express his intention in regard to each proposition."

▮ Does this section prohibit the inclusion of several subjects within a single charter amendment? The question is answered in the negative. The section establishes three requirements for the form of the proposed amendment on the ballot. It requires, first, that there be words that "show the nature of" the charter amendment; second, that opportunity be given each voter to place a cross mark on the ballot which shows clearly whether it is his intention to vote for or against the amendment; and, third, "*in case* any separate or alternative proposition or propositions be submitted" (italics supplied) the form of the ballot must be such as to allow the voter to express his intention clearly as to each proposition. It was the third requirement that the trial court felt had been violated in the present case. We cannot agree. We do not read the language of the third portion of section 268 as meaning that a proposed amendment must be dissected into as many parts as there are "propositions" that can be found within it. Such a reading of the section would run counter to our decisions which have avoided imposing any such requirement. Furthermore, it is clear from the wording of the section that the word "proposition" was used as a convenient term to avoid repeating "measure, charter amendment, proposal for a charter convention or ordinance" again. It makes great

sense to require that a proposed charter amendment intended by its proponents to be an alternative to another proposed amendment be clearly set forth on the ballot as such and the voters given an opportunity to express their preference for one or none, but such is not the case here. There was no alternative amendment ("proposition") before the voters.

Third: *It having been concluded that neither the Constitution nor the Charter of the City and County of Denver provide specific limitations with respect to the inclusion of more than one subject in a single charter amendment, what, if any, limitations exist in this area?*

█ As we view it, the restrictions which are to be gleaned from Article XX of the Constitution and Sections 216 and 268 of the Charter, all read together, require that the title be clear and comprehensive. It must show the nature of the measure to be voted upon so that the voter shall have the opportunity to express his preference and in the event that any separate or alternative proposal is submitted, the ballot must be such as to allow the voter to express his intention as to this proposition. And so, therefore, the tests are: Does the title adequately describe the measure; is the amendment so complex as to render it impossible to adequately and comprehensively express its subject matter in the title; is it possible for a voter to be deceived because of its inadequate or misleading description?

The above suggested and perhaps not exclusive list of tests show the nature of the inquiry. Applying these standards to the present case, we conclude that the subjects are adequately described and it therefore follows that the measure in question is not contrary to the Constitution or Charter and consequently the trial court erred in holding the amendment to be invalid.

One remaining question merits consideration. This concerns the trial court's holding that notwithstanding other grounds of invalidity, the present amendment vio-

lates Section 6 of Article XX of the constitution which provides:

"From and after the certifying to and filing with the secretary of state of a charter framed and approved in reasonable conformity with the provisions of this article, such city or town, and the citizens thereof, shall have the powers set out in sections 1, 4 and 5 of this article, and all other powers necessary, requisite or proper for the government and administration of its local and municipal matters, including power to legislate upon, provide, regulate, conduct and control: * * *

"(f) The consolidation and management of park or water districts in such cities or towns or within the jurisdiction thereof; but no such consolidation shall be effective until approved by the vote of a majority, in each district to be consolidated, of the qualified electors voting therein upon the question;"

As mentioned above, Article III of the charter originally designated four park districts within the city. The 1955 amendment did away with these districts for the future although in section 25 a saving clause was included which provided:

"Local public improvement districts created but not completed and assessed on the effective date of this amendment shall be governed, until completed and assessed, by the provisions of the charter as effective prior to this amendment."

The trial court saw this change as a "consolidation" within the meaning of Section 6 (f). The position of the city on this question is that Section 6 (f) is intended to preserve the existing political entities or at least that such existing political entities shall be terminated only at the behest of those who created them. It distinguishes between termination and consolidation and argues that the latter is of concern because of the possibility of an adverse effect on bondholders in a park district consolidated with another, but that there is no such concern when a park district is terminated as an administrative

area. In the latter case existing obligations and security would not be affected. We believe that the construction of Section 6 (f) argued for by the City is the more reasonable in the circumstances. The word consolidation appears on its face to be one of rather narrow meaning and when considered in light of the policy discussed above would appear to be a word that was consciously and carefully chosen by the framers of the Twentieth Amendment. Although the record contains no evidence on the point, we are told by the City in its brief that no indebtedness has ever been created on behalf of the old park districts, that no one looks to any of the districts for security of obligation, and that bonds issued for improvements in these districts have always been the bonds of the City.

The adoption of the 1955 charter amendment did not constitute a "consolidation" of park districts within the meaning of Section 6 (f) of Article XX and therefore the amendment does not violate this section of the constitution.

In reaching its conclusion the trial court relied on the points discussed above. There are, however, a number of other issues raised by plaintiffs' complaint which it did not pass on. Since our holding is that the 1955 charter amendment does not violate the sections of the constitution and the city charter relied on below, the judgment of the trial court must be reversed and the cause remanded for further proceedings.

MR. JUSTICE FRANTZ, MR. JUSTICE HALL and MR. JUSTICE KNAUSS concur in result.