No. 21515.

W. H. DAVIS, ET AL. *v.* PUEBLO, ET AL.
(406 P.2d 671)

Decided October 11, 1965.     Rehearing denied November 1, 1965.

Thomas T. Farley, for plaintiff in error W. H. Davis.

Lawrence Litvak, George Louis Creamer, for plaintiffs in error Robert Borinsky and Joe Kark.

Gordon D. Hinds, City Attorney, Dawson, Nagel, Sherman & Howard, Raymond J. Turner, James B. Daley, for defendant in error.

*En Banc.*

Mr. Justice Day delivered the opinion of the Court.

Plaintiffs in error brought an action in the Pueblo District Court in which they sought to invalidate an ordinance authorizing the issuance of off-street parking revenue bonds of the City of Pueblo, which ordinance was adopted and approved February 24, 1964. We will refer to them as plaintiffs. The defendant in error, City of Pueblo, a home rule municipal corporation, will be referred to as Pueblo.

The Attorney General was named as a defendant in the court below, but was there dismissed from the suit. He has filed with this court a pleading indicating that he has no interest in the matter and is therefore not participating in this writ of error.

A trial was held on stipulation of the parties. The court in its findings of fact, conclusions of law and judgment declared the ordinance valid for the reasons:

1. That the bonds in question are legal revenue bonds payable from special funds and are not a debt or obligation of the city;

2. That because of their character as revenue bonds, the provisions of the charter of the City of Pueblo pertaining to the issuance of general obligation bonds are not applicable;

3. That the provisions of Article XI, section 8 of the Colorado constitution is not applicable to revenue bonds issued by a home rule city;

4. That the provisions of C.R.S. 1963, 89-4-1, et seq., do not preclude Pueblo as a home rule city from authorizing and funding off-street parking facilities;

5. That no Colorado or Federal constitutional provisions or any Colorado law was violated by submitting the question of the acquisition and funding of off-street parking facilities to the taxpaying electors of Pueblo.

It is herein argued as grounds for reversal that each of these findings of the trial court is erroneous as is the judgment in favor of Pueblo.

We perceive no error in the judgment of the trial court and submit the following questions for resolution:

1. *ARE THE BONDS AUTHORIZED BY THE ORDINANCE GENERAL OBLIGATION BONDS OF THE CITY OF PUEBLO?*

█ This question is answered in the negative.

In support of their contention, the plaintiffs state that the ordinance, in addition to pledging the revenue from the off-street parking facilities, additionally provides for the use of parking meter revenues to be used for

payment of interest and principal on the bonds. They assert that, traditionally, this revenue has gone into the general fund for the operation of the expenses of the city and that to the extent that the parking meter revenues are applied to these bonds, the general fund will be "shorted" and that additional revenue, by ad valorem property taxes, will have to be raised to supplant the parking meter revenue heretofore available.

This argument presents no material differences from that asserted in *Brodhead v. Denver*, 126 Colo. 119, 247 P.2d 140. In that case we rejected the argument repeated in this writ of error, and the Brodhead case, being a complete answer, requires no lengthy comment. The reasoning in the Brodhead case has found support in other jurisdictions. See *Poole v. City of Kankakee*, 406 Ill. 521, 94 N.E.2d 416; *Skidmore v. Elizabethtown*, (Ky.) 291 S.W.2d 3; *Gate City Garage v. City of Jacksonville*, (Fla.) 66 So.2d 653. We hold, therefore, that the bond issue here under attack does not come within the purview of general obligation bonds.

2. *DOES THE BOND ISSUE IN QUESTION CONTRAVENE THE PROVISIONS OF ARTICLE XI, SECTION 8, OF THE COLORADO CONSTITUTION?*

■ This question is answered in the negative.

The argument advanced here that the bond authorization violates the limitations imposed by the Colorado constitution, *supra*, was answered in *Berman v. City and County of Denver*, 156 Colo. 538, 400 P.2d 434. Therein we held that the matter of financing a program of capital improvements by a home rule city is one dealing with a local and municipal matter and that Article XX of the state constitution has superseded Article XI by providing, inter alia, "Anything in the constitution of this state in conflict or inconsistent with the provisions of this amendment is hereby declared to be inapplicable to the matters and things by this amendment covered and provided for." The home-rule amendment specifically empowers a home-rule city to

issue bonds. If there is no limitation on the bonds in question in the city charter, neither Article XI nor Article XX are violated. The only limitation imposed in the Pueblo city charter refers to general obligation bonds, and, as we have held, these are revenue bonds.

3. *DO THE PROVISIONS OF C.R.S. 1963, 89-4-1, ET SEQ., APPLY TO THESE BONDS AND THE FACILITY SOUGHT TO BE PROVIDED?*

■ This question is answered in the negative.

The statute alluded to by this argument refers to improvement districts. Assuming, but not deciding, that the statute may be followed by a home-rule city (as provided in 89-4-2), the statute is permissive but not mandatory if the improvement sought to be constructed is one of local and municipal concern. Pueblo did not, in the ordinance, seek to create an improvement district, and Pueblo, under its powers, is not precluded from following other methods in constructing and funding off-street parking facilities. In *Denver v. Commissioners,* 113 Colo. 150, 156 P.2d 101, this court held that Denver, under Article XX of the constitution, is not restricted by an act of the legislature allowing acquisition and construction of airports only within five miles of a municipality's boundaries. The rationale of that case is applicable to the determination herein.

4. *DOES THE ORDINANCE IN QUESTION VIOLATE THE PROVISIONS OF THE PUEBLO CITY CHARTER?*

■ This question is answered in the negative.

The ordinance here under attack provided for the retirement of the revenue bonds serially over a period of twenty-five years. It is contended that the period for maturity is in excess of that allowed by Section 7-23 of the Pueblo City Charter, which reads:

"Section 7-23. GENERAL OBLIGATION BONDS— The City Council shall have power to issue general obligation bonds of the City and for either or both water districts thereof, for any public capital purpose, upon

majority vote of the taxpaying electors of the City or district at any special or general election. The total outstanding general obligation indebtedness of the City, other than for water bonds, shall not at any time exceed three (3) per centum of the assessed valuation of the taxable property within the City as shown by the last preceding assessments for tax purposes. *Bonds of the City,* other than water bonds, shall mature in not more than fifteen (15) years from date of issue and shall be payable in annual installments commencing not later than two (2) years after the date of said bonds. Water bonds shall mature and be payable as provided by the ordinance authorizing the issuance of said bonds." (Emphasis supplied.)

Anticipating that this court might agree with Pueblo that the bonds authorized are not general obligation bonds of the city, plaintiffs nevertheless contend that even revenue bonds are encompassed in the charter by the language: "Bonds of the City, * * * shall mature in not more than fifteen (15) years * * *." They would have us take this sentence out of context with that which precedes it in the charter section and construe the sentence to cover *all bonds* except water bonds.

■ Under well established rules of statutory construction which we have heretofore promulgated, we cannot ascribe to the words "Bonds of the City" the meaning here contended for by the plaintiffs. The section cited is entitled "General Obligation Bonds." It refers to debt limitations calculated on a percentage of "assessed valuation of the taxable property of the City" therefore indicating that the bonds referred to are specifically limited to such as would pledge the credit of the city, be fundable through ad valorem taxes upon real property, and which would constitute a lien thereon. The words then cannot be lifted out of context. Where general words, such as "bonds of the city" are used along with specific words such as "general obligation bonds" the general language is restricted to the specific.

*Bowman v. Eldher,* 149 Colo. 551, 369 P.2d 977; *Centennial Properties, Inc. v. City of Littleton,* 154 Colo. 191, 390 P.2d 471.

One other matter urged which we discuss briefly here is also without merit. Plaintiffs, while asserting that the bonds were general obligation bonds upon which *only taxpaying electors* could vote, adopted the inconsistent position that the election being restricted to only taxpayers was invalid and should have been submitted to all registered voters in the city.

██ The bonds being revenue obligations required no election to be held at all. The submission to the voters was advisory only. The matter before the voters was not an ordinance which became effective after the vote. The City Council was not obligated to pass the ordinance. It could very well have enacted it without submission to popular vote. Decreeing the election void — even if we were to do so — would not invalidate the ordinance. *Muehring v. School District No. 31,* 224 Minn. 432, 28 N.W.2d 655. We also note that the plaintiffs were all taxpayers. They sued in their individual capacity and not as a class. However, if we hold that this is a class action, the plaintiffs were in the class to whom the question was submitted for vote. Furthermore, those who were precluded from voting are not complaining.

The judgment is affirmed.