No. 24986.

C. H. HOPER, JOHN B. SMITH AND PHILIP MILSTEIN, INDIVIDUALLY AND FOR OTHERS SIMILARLY SITUATED *v.* CITY AND COUNTY OF DENVER, A MUNICIPAL CORPORATION, JAMES T. BAYER, F. JAMES VOSS AND F. J. SERAFINI, CONSTITUTING THE ELECTION COMMISSION FOR THE CITY AND COUNTY OF DENVER, DONALD E. BARKER, HAROLD N. GRIMES, JOHN LOPEZ, RUTH WEINER AND WAYNE N. KNOX, INDIVIDUALLY AND FOR OTHERS SIMILARLY SITUATED.

(479 P.2d 967)

Decided January 18, 1971. Rehearing denied February 8, 1971.

Gorsuch, Kirgis, Campbell, Walker and Grover, for plaintiffs-appellees and cross-appellants.

Max P. Zall, City Attorney, Thomas A. Gilliam, Assistant, Brian H. Goral, Assistant, for defendants-appellants City and County of Denver and its Election Commissioners.

Dawson, Nagel, Sherman & Howard, for appellants Barker, et al.

Donald P. MacDonald, Richard J. Bernick, Charles B. Howe, for appellant Wayne N. Knox.

*En Banc.*

Mr. Justice Day delivered the opinion of the Court.

Suit was commenced in this action on June 9, 1970. The case is in the nature of a class action, pursuant to C.R.C.P. 23, and questions the validity of a charter amendment submitted to the voters of the City and County of Denver at an election held on Tuesday, September 10, 1968.

The case was originally filed against the City and County of Denver and the individual members of its Election Commission. When defendants Donald E. Barker, Harold N. Grimes, John Lopez and Ruth Weiner and defendant Wayne Knox sought to intervene, leave was given to file an amended complaint in the nature of a class action.

Plaintiffs below were C. H. Hoper, John B. Smith, and Philip Milstein and are appellees in this court representing that subclass of voters of Denver that question the validity of the charter amendment. Defendants be-

low were the City and County of Denver, James T. Bayer, F. James Voss, and F. J. Serafini, constituting the Election Commission of Denver plus Donald E. Barker, Harold N. Grimes, John Lopez, Ruth Weiner, and Wayne N. Knox representing the subclass of the electorate of Denver who seek to uphold the validity of the charter amendment.

The case was submitted for decision to the trial court below on briefs and an agreed statement of facts without oral argument. The district court on November 12, 1970 rendered a two-pronged ruling and judgment declaring the charter amendment invalid. Timely appeal was filed. Since the close proximity of upcoming municipal elections dictated an early decision, an accelerated briefing and hearing schedule was granted by this court.

The facts, not in dispute, are briefly as follows:

At a special municipal election held on Tuesday, September 10, 1968, there was submitted to all qualified electors an amendment to Denver's home rule charter. The amendment carried by a vote of 48,293 in favor and 29,178 against. The amendment, as adopted, repealed certain provisions of the charter and, by enacting new Sections Cl.1-Cl.14, inclusive, provided for a new municipal election system. The primary and general municipal election dates were established, and the city council was directed to enact laws for the designation, nomination, and election of municipal officers. Such laws were to be as nearly identical to the general election laws of the State of Colorado as possible, and were also to provide for complete and public reporting of campaign expenditures and contributions. Elected or appointed incumbents were confirmed in office until successors are duly elected and qualified. The practical effect of these charter revisions was to convert the method of electing municipal officials from a non-partisan system (in effect since 1913) to a party-designate system similar to the method of electing state officials.

It was the holding of the trial court that:

(1) The grant of power to home rule cities in Colo. Const. art. XX, *as amended,* and relative to municipal elections is not restrictive, and thus the charter amendment adopted by the people of the City and County of Denver on September 10, 1968 creating partisan elections is constitutional. However,

(2) The ballot title under which the amendment was submitted to the people was invalid in that it failed to meet the requirement of Section Cl.19 of the Denver Charter requiring that a ballot title "show the nature" of the charter amendment to be voted upon. The court further ruled that all ordinances enacted pursuant to the invalid amendment were enacted without legal authority under the charter and are therefore also invalid.

Defendants-Appellants appeal, urging that the judgment of the court below be reversed and the validity of the amendment sustained. Plaintiffs-Appellees are in agreement with the second finding of the lower court, but cross-appeal, urging that we reverse the judgment and hold that the amendment was violative of the state constitution. We affirm the district court judgment and are in accord with both rulings.

The arguments presented will be disposed of herein in the same order as in the court below.

I.

Plaintiffs-Appellees urge in their cross-appeal that the amendment in question be declared violative of the Colorado constitution, contending art. XX, § 6 limits home rule cities to non-partisan forms of government. The emphasized portion of the following quotation from art. XX, § 6 is cited by plaintiffs in support of their contention:

"[S]uch city or town, and the citizens thereof, shall have * * * all other powers necessary, requisite or proper for the government and administration of its local and municipal matters, including power to legislate upon, provide, regulate, conduct and control:
* * *

"d. All matters pertaining to municipal elections in such city or town, and to electoral votes therein on measures submitted under the charter or ordinances thereof, including the calling or notice and the date of such election or vote, the registration of voters, nominations, nomination and election systems * * * the form of ballots * * * securing the purity of elections, guarding against abuses of the elective franchise, and *tending to make such elections or electoral votes non-partisan in character.*" (Emphasis added.)

In concluding that the above language did not restrict home rule cities to non-partisan elections, the lower court relied, in part, on the following language, also from art. XX, § 6:

"It is the intention of this article to grant and confirm to the people of all municipalities coming within its provisions the full right of self-government in both local and municipal matters and the enumeration herein of certain powers *shall not be construed to deny such cities and towns, and to the people thereof, any right or power essential to the full exercise of such right.*" (Emphasis added.) *See Newton v. Ft. Collins,* 78 Colo. 380, 241 P. 1114.

 We interpret those provisions to mean that one of the specific powers granted to home rule cities was to "Legislate upon, provide, regulate and control municipal elections" *including* the power (if desired to be exercised) to "tend to make such elections or electoral votes non-partisan in character." In other words the language does not limit home rule cities only to non-partisan elections. Had the framers desired to so limit local power it would have been very simple to so state. In the absence of a clear statement to the effect that municipalities are limited to non-partisan elections, such meaning cannot and should not be inferred. We decline to impute meaning into language which, when read with attention to the expressed intent of the framers found in related sections, requires little or no interpretation

to be fully understood. *See Denver v. Telegraph Co.*, 67 Colo. 225, 184 P. 604. It is our belief that the language questioned by the plaintiffs, falling as it does after the word "including," is in the nature of an illustration of the powers that can be exercised by a municipality such as Denver under the provisions of article XX rather than a limitation upon such power. "The purpose of the Twentieth Amendment was to extend the powers of cities, not to further restrictions * * *." *Newton v. City of Fort Collins, supra. See also Davis v. Pueblo*, 158 Colo. 319, 406 P.2d 671.

The history of the home rule amendment (article XX) also mandates such interpretation. Article XX, added to the Colorado constitution in 1902, established Denver as a consolidated municipal government with home-rule powers. During the succeeding ten or so years, there was considerable controversy over the construction of the amendment. *See Denver v. Telegraph Co., supra*. This controversy was based in major part upon the narrow judicial determination of what was a local or municipal matter and therefore within the control of a home-rule city. *See, e.g., People v. Cassiday*, 50 Colo. 503, 117 P. 357; *Denver v. Hallett*, 34 Colo. 393, 83 P. 1066.

Then in April of 1912, this court, in the case of *Mauff v. People*, 52 Colo. 562, 123 P. 101, held that the City and County of Denver had, under article XX, only very limited power concerning the conduct and control of municipal elections, and that the Colorado constitution and general laws concerning the regulation, control and management of elections (which of course embodied a "partisan" system) were fully applicable to Denver municipal elections. Subsequently, the people initiated and adopted in 1912 an amendment (commonly known as the "Home Rule Amendment") to article XX, § 6 relevant portions of which were quoted above. The rationale and intended effect of this amendment has been interpreted as follows:

"It is a part of the history of the state that the people

were disappointed, not to say more, at the restrictions put upon the powers of cities by this court's interpretations of Article XX, and that the Home Rule Amendment was the expression of that feeling." *Denver v. Telegraph Co., supra.*

The conclusion that the amendment to § 6 was designed to vest home rule cities with the authority to opt for partisan elections if they so desired, is borne out further by the language of a charter amendment approved by a vote of the people of Denver in 1913 only a few months after the 1912 amendment took effect:

"For a non-partianship system of election for the City and County of Denver.

"Against a non-partianship system of election for the City and County of Denver."

If the intent of the amendment to § 6 was to limit the home rule city to non-partisan elections, it hardly would have been necessary to submit such a choice as the one above to the voters of Denver almost immediately after the amendment took effect. The non-partisan system of election was approved at that election, but if the alternative proposition had prevailed it would have been in accord with the power granted by the so-called "home rule amendment."

## II.

In support of their argument that the ballot title under which the amendment in question was submitted to the electorate was sufficient, defendants-appellants raise numerous grounds for reversal of the judgment of the court below. We decline to pass or comment upon the majority of these grounds, however, inasmuch as we have concluded, as did the court below, that the ballot title in question is clearly defective.

One of the powers granted to a home rule city under article XX is to regulate and control the form of ballots (see the relevant portions of § 6 quoted above). In this regard, the Charter of the City and County of Denver § Cl.19 provides:

"At any election at which any * * * charter amendment * * * shall be submitted to a vote of the qualified electors, the official ballot shall, by proper words to be provided for by ordinance, *show the nature of* the * * * charter amendment * * * to be voted upon * * *."

This provision has been construed to mean that the:

"[T]itle be clear and comprehensive. It must show the nature of the measure to be voted upon so that the voter shall have the opportunity to express his preference * * *. And so, therefore, the tests are: Does the title adequately describe the measure; is the amendment so complex as to render it impossible to adequately and comprehensively express its subject matter in the title; *is it possible for a voter to be deceived because of its inadequate or misleading description?*" (Emphasis added.) *Denver v. Mewborn,* 143 Colo. 407, 354 P.2d 155.

In a case subsequent to *Mewborn,* we held that "the object of the title of an amendment is to notify those concerned with the act as to what is being proposed in the body of the ordinance." *Coopersmith v. Denver,* 156 Colo. 469, 399 P.2d 943.

The official ballot had as the title of the charter amendment in question the following:

"For Against

Amendment No. 4

Repealing Sections Cl.1 through Cl.10, inclusive and Cl.12-2 of the Charter of the City and County of Denver (1960 compilation) and enacting new Sections Cl.1 through Cl.4 concerning municipal elections and officers."

As the court below correctly found, there is no doubt but that the basic structure of municipal elections in Denver was changed by this amendment, especially in the area of setting up partisan elections in the place of what had been previously non-partisan. To quote from the judgment and order of Judge Pinchick: "It would be difficult for one reading the title of the amendment on the ballot to conceive of the nature of the amend-

ment, as the title merely identifies the charter provisions which are affected by number and does not in any way indicate the general nature or effect of the amendment."

 Our conclusion that the ballot title in question does not comply with the Charter provision § Cl.19 does not mean, however, that in the future substantially all of the language of a proposed amendment need be placed on the ballot. To the contrary, it seems certain that the vast majority of the ballot titles used in the past were sufficient. For example, the 1913 ballot title quoted above would appear to meet the requirement. Verbosity is not required. What is required is some indication to the voter as to what effect the amendment, if approved, will have.

 Defendants emphasize that Colo. Const. art. XX, § 5, provides for the publication of the "full text" of all proposed charter amendments "for three times * * * in the official newspapers." It is their contention that it is this official publication that is intended to inform the voter of the meaning of the proposed changes, and all a ballot title need do is indicate the charter sections to be amended. While the governing body of a home rule municipality may not circumvent or seek to avoid such constitutional requirements as the publication requirement, we see no illegality in a municipal charter requirement that the ballot title "show the nature of" the amendment. The power to establish minimum standards for ballot titles is clearly expressed in both the general and specific provisions of art. XX, § 6.

It should be pointed out at this juncture that those cases cited by defendants-appellants dealing with the sufficiency of legislative titles are not germane to our discussion here. Colo. Const. art. V, § 21 provides that only the "subject" need be expressed in the title to a bill, and we have interpreted this section to allow legislative bill titles similar in wording to the ballot title of the charter amendment in question. *See California Co. v. Colorado,* 141 Colo. 288, 348 P.2d 382;

*Shaffer & Co. v. Prosser,* 99 Colo. 335, 62 P.2d 1161. This court held as early as 1913, however, that art. V, § 21 has no application to charter amendments made pursuant to article XX by municipalities. *People ex rel. Moore v. Perkins,* 56 Colo. 17, 137 P. 55.

### III.

█ It is the contention of defendant Knox that one affected by an ordinance cannot attack its validity on the ground of its non-compliance with formal requirements in the manner of enactment where it has been recognized as valid and has been in effect for several years at the time objection is first asserted. Citing. *Parker v. Concord,* 71 N.H. 468, 52 A. 1095. We find this argument to be specious. The amendment has not been given effect and would not be until some step in the elective process had been taken. This argument could only have validity if the challenging electors had awaited the outcome of an election and then had sought to invalidate it.

Judgment affirmed.

MR. JUSTICE LEE concurs in part and dissents in part.

MR. JUSTICE LEE concurs in part and dissents in part:

I concur in part I of the opinion of the Court which affirms the ruling of the trial court interpreting § 6 of article XX of the Colorado constitution as permitting charter provisions for partisan or nonpartisan municipal elections in home rule cities and towns.

I respectfully dissent from part II of the opinion of the Court which affirms the judgment of the trial court holding that the ballot title of the referred charter amendment was defective, thereby invalidating the submission of the charter amendment to the people.

I simply disagree that the ballot title in this instance did not sufficiently set forth the "nature" of the charter amendment to be voted upon. "Nature" means "kind," "order" or "general character." *Merriam-Webster New*

*International Dictionary* (Third Edition), p. 1508. Here, the submission clearly and completely advised the voter that the proposed amendment would repeal designated charter sections and enact new charter sections *"concerning municipal elections and officers."* It is readily understandable that the proposed amendment was one to revise the election laws of the City and County of Denver.

The charter provision, section Cl.19, with respect to the required content of a submission clause — ballot title — *does not require,* as was assumed by the trial court and the majority of this Court, that the *effect* of the proposed amendment must be indicated in the ballot title. Such is read into the law, I believe, unjustifiably and unnecessarily, in view of the charter requirements concerning notice and publication of proposed ordinances, and also the constitutional provisions concerning notice and publication of proposed charter amendments (§ 5 of article XX, Colorado constitution). All of these procedural requirements were scrupulously followed in the proceedings under question. As indicated by the agreed statement of facts, the submission ordinance, which contained the full text of the proposed charter amendment, was published two times; and the charter amendment was again published in full three times prior to the charter election, all five publications being in newspapers of general circulation. In addition, public hearings were held before the city council. Also, public discussion (though not legally required) of the proposed amendment was held in the newspapers and on radio and television. Moreover, sample ballots were provided the voters showing the submission clauses of four separate charter amendments to be voted upon at the election in question; and each of these concerned distinct subject matters set forth in boldface type entitled "POLICE DEPARTMENT AMENDMENT NO. 1," "FIRE DEPARTMENT AMENDMENT NO. 2," "COUNCIL-

MANIC DISTRICT AMENDMENT NO. 3," and "MUNI-CIPAL ELECTIONS AMENDMENT NO. 4."

It is my opinion that the tests of *Denver v. Mewborn,* 143 Colo. 407, 354 P.2d 155, as set forth in the majority opinion, were satisfied. I believe it unrealistic that 77,471 voters, 48,293 of whom voted in favor of and 29,178 of whom voted against the proposed amendment, were in any way confused, mislead or deceived by the wording of the ballot title. To hold, as a matter of law, that the title was so insufficient that it tended to confuse, mislead or deceive, in the absence of any factual support whatsoever in the record, is unadvised under the circumstances of this case. Accordingly, I consider the result to be an unwarranted interference by the judiciary with the political processes of the City and County of Denver.