**No. 27077**

**Kathy Gosliner, Cecil Jones and The Denver Publishing Company v. The Denver Election Commission and James Bayer, James Voss and Fernando J. Serafini, as Election Commissioners**

(552 P.2d 1010)

Decided August 3, 1976.

Clark, Martin and Pringle, Bruce D. Pringle, for plaintiffs-appellants.

Max P. Zall, City Attorney, Gerald Himelgrin, Assistant, for defendants-appellees.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

This appeal involves a determination of the applicability of the "Colorado Public Meetings Law" (C.R.S. 1963, 3-19-1)[1] to proceedings by the Denver Election Commission (hereinafter called the Commission).

Appellants Gosliner and Jones were reporters employed by the Rocky Mountain News, which is published by appellant The Denver Publishing Company. They unsuccessfully sought admission to an executive session of the Commission. At that session, the commissioners engaged in preliminary examination into the validity of certain signatures contained on publicly tendered petitions to recall a Denver councilman.

After appellants were denied access to this session, they sought a declaratory judgment in Denver district court to determine their rights under the Public Meetings Law. This statute reads as follows:

"3-19-1. Public meetings. (1) All meetings of any board, commission, committee, or authority of this state or a political subdivision of the state, created by law, and supported by law in its activities in whole or in part with public funds, are declared to be public meetings and open to the public at all times; provided such groups by majority consent of members present, may go into executive session for consideration of documents or testimony given in confidence, but shall not make final policy decisions nor shall any resolution, rule, ordinance, regulation or formal action or any action approving a contract or calling for the payment of money be adopted or approved at any session which is closed to the general public.

"(2) Any action taken contrary to the provisions of subsection (1) of this section shall be null and void and without force or effect."

The Commission contends it is a creature of the charter of Denver, a home rule city, and the statute is inapplicable to its proceedings.

The trial court considered the relevant portions of the Colorado constitution and the Denver charter. It held that the statute did not conflict with any provision of the charter and therefore the Commission was subject to the provisions of the statute.

---

[1] Amended Colo. Sess. Laws 1974, ch. 102, 3-19-1, at 401; now section 29-9-101, C.R.S. 1973.

The court further ruled that under the statute an executive session is a meeting at which the pertinent public body (here the Commission) considers documentary evidence which has been tendered to the members of that body at an open session and during which meeting no final policy decision is made. The court then held that the Commission was entitled to go into executive session and could exclude appellants and members of the public from those deliberations.

■ We affirm the judgment of the trial court, albeit holding that the reason assigned was erroneous and that the public meetings law has no application to the Commission.

Denver, being a home rule city, is empowered to adopt and amend its charter which is its organic law extending to all its local matters. *Colo. Const.* Art. XX, Sec. 6. In particular, the Colorado constitution delegated to Denver the power to conduct and control all matters pertaining to municipal elections. *Colo. Const., supra*, at subsection ·d. This grant of power is not restrictive. *Hoper v. City and County of Denver*, 173 Colo. 390, 479 P.2d 967 (1971).

Pursuant to the above constitutional grant, Denver created an election commission fully empowered by the city charter to perform the duties relevant to elections in Denver. *Denver City Charter* C1.11. Subsequently Denver enacted several ordinances dealing with elections, *e.g., Denver Revised Municipal Code* 110-122. Denver Code section 122 specifically deals with recall elections and describes the nature of valid recall petitions.

■ The charter and the code sections regarding the election commission are special provisions, whereby the commissioners derive specific and particular powers to make its own rules. On the other hand, the Public Meetings Law is general. This court has consistently held that general legislation does not repeal specific law unless the intent to do so is clear and unmistakable. *Associated Students of the University of Colorado v. Regents of the University of Colorado*, 189 Colo. 482, 543 P.2d 59 (1975); *People v. Burke*, 185 Colo. 19, 521 P.2d 783 (1974); and *Denver v. Rinker*, 148 Colo. 441, 366 P.2d 548 (1961).

■ Appellants contend that since by its very language C.R.S. 1963, 3-19-1 is meant to apply to ''all meetings of any . . . commission . . . of . . . a political subdivision of the state . . . [,]'' the legislature thereby impliedly intended to strip from Colorado's home rule cities a proportionate amount of control over their local affairs. We disagree. Some of the grants of power in the constitution contain a limitation "unless otherwise provided by law." No such proviso is in Article XX. Therefore the legislature cannot divest a home rule city of its plenary power to deal with municipal elections. Section 6 of Article XX provides a home-rule city shall be vested with power to legislate upon, provide, regulate, conduct, and control:

"d. All matters pertaining to municipal elections in such city or town, and to electoral votes therein on measures submitted under the charter or ordinances thereof, including the calling or notice and the date of such election or vote, the registration of voters, nominations, nomination and election systems, judges and clerks of election, the form of ballots, balloting, challenging, canvassing, certifying the result, securing the purity of elections, guarding against abuses of the elective franchise, and tending to make such elections or electoral votes non-partisan in character[.]"

The legislature may not with one broad stroke nullify a constitutionally-created power. If the statute were applicable to the Commission, it would supplant a significant amount of the Commission's control over local elections, *i.e.*, the manner in which it conducts its affairs and the nature of its deliberations.

The judgment is affirmed, but the reason therefor is disapproved.

MR. CHIEF JUSTICE PRINGLE and MR. JUSTICE ERICKSON do not participate.