**Joan MAY, William Felicelli, John Rielly, Peter Chadman & Virginia Oglesby, Plaintiffs–Appellants,**

v.

**TOWN OF MOUNTAIN VILLAGE, a Colorado municipal corporation, Defendant–Appellee.**

**No. 98CA0088.**

Colorado Court of Appeals, Div. A.

Rehearing Denied Nov. 27, 1998.

Oct. 29, 1998.

John H. Steel, Telluride, Colorado, for Plaintiffs–Appellants.

Williams, Youle & Koenigs, P.C., Dennis J. Herman, Michael T. Gilbert, Denver, Colorado; J. David Reed, P.C., J. David Reed, Montrose, Colorado, for Defendant–Appellee.

Opinion by Chief Judge HUME.

Plaintiffs, residents of the Town of Mountain Village, a Colorado municipal corporation, appeal the summary judgment entered in favor of the Town on the issue of whether it has the right under its charter to qualify non-residents to vote in municipal elections. We affirm.

The facts of this case were stipulated and appear of record in the Case Management Order dated June 3, 1997. In March 1995, a majority of the residents of the Town voted to approve a Home Rule Charter. Mountain Village Charter § 2.4.b) grants the right to vote on any issue at any town election to non-

resident property owners who: 1) register with the Town Clerk at least 30 days prior to any Town election; 2) are owners of record for at least 30 consecutive days immediately prior to the date of an election; 3) own during that time at least 50% of the fee title interest in real property in the Town; 4) are at least 18 years of age at the time of the election; and 5) are natural persons.

As pertinent here, 505 residents and 541 non-residents were eligible to vote in municipal elections. Residents own approximately 4% of the assessed value of real property in the Town; non-residents own approximately 34%; the rest is owned by corporations and other entities not entitled to vote.

By affidavit of the Town Clerk and custodian of records, it was established that the 1995 total assessed value of real property was approximately $89 million. Residents owned approximately $3,896,918 of that total and paid approximately $279,955 in property taxes. Non-residents entitled to vote owned property valued at approximately $30,912,699 and paid approximately $2,221,038 in property taxes.

In 1996, plaintiffs filed a complaint in the United States District Court for the District of Colorado, asserting that the Charter provision granting the right to vote to non-resident property owners violated their right to equal protection under the Fourteenth Amendment and Colo. Const. art. II, § 25. Plaintiffs also contended that the Charter provision violated several other provisions of Colorado law.

The federal district court granted summary judgment in favor of the Town, finding no violation of equal protection and refusing to exercise supplemental jurisdiction over the claims made under the Colorado Constitution and Colorado statutes. *May v. Town of Mountain Village*, 944 F.Supp. 821 (D.Colo. 1996). That ruling was affirmed on appeal to the United States Court of Appeals. *May v. Town of Mountain Village*, 132 F.3d 576 (10th Cir.1997), *cert. denied,* — U.S. —, 118 S.Ct. 2343, 141 L.Ed.2d 714 (1998).

Thereafter, plaintiffs filed this state action in the district court for declaratory judgment and injunctive relief, reasserting their claims under the Colorado Constitution and provisions of Colorado statutory law. This appeal followed the entry of summary judgment in favor of the Town.

## I.

Plaintiffs first contend that, regardless of the decisions of the federal court finding no equal protection violation under the Fourteenth Amendment, the Charter provision violates the guarantee of equal protection under the laws as provided by Colo. Const. art. II, § 25. We disagree.

■ Although the equal protection clause of the Fourteenth Amendment creates rights which cannot be restricted or infringed by the constitution or laws of Colorado, the Colorado Constitution may afford greater protections than those recognized by the United States Constitution. *See Millis v. Board of County Commissioners*, 626 P.2d 652 (Colo. 1981).

As the federal courts have already decided the equal protection challenge under the United States Constitution, plaintiffs must demonstrate justification for the expansion of the guarantee of equal protection under the Colorado Constitution. *See Millis v. Board of County Commissioners, supra.*

Plaintiffs argue that, under *Evans v. Romer,* 854 P.2d 1270 (Colo.1993), because voting is a fundamental constitutional right, strict scrutiny should apply to the analysis of the equal protection claim. In *Evans,* the supreme court addressed a denial of the right to participate equally in the political process and determined that any attempt to infringe on an independently identifiable group's ability to exercise that right is subject to strict judicial scrutiny.

Here, in contrast, plaintiffs were not denied access to the political process, and the voting franchise is not being denied to any person otherwise qualified to vote under Colorado law. Rather, the franchise is expanded to include non-resident property owners.

■ Nonetheless, plaintiffs argue that this expansion constitutes a dilution of the efficacy of their votes, which should be treated the same as an outright denial of the franchise.

However, we agree with the federal district court, that "there is simply no evidence here that the Town restricts access to the electoral process or treats voters unequally." *May v. Town of Mountain Village, supra,* 944 F.Supp. at 824. In addition, as noted in that opinion, when a law expands the right to vote causing vote dilution, the majority of courts apply the rational basis test. We agree that the rational basis test is applicable here.

■ Under the rational basis test, the classification challenged need only be rationally related to a legitimate state interest. A classification scheme may be invalidated only if no set of facts can reasonably be conceived to justify it. *See Millis v. Board of County Commissioners, supra.*

■ Here, the reason for the expansion of voting qualifications to include non-resident property owners is explained in the Charter itself. (Mountain Village Charter § 1.4.b), entitled "Provision for Non-resident Voting Rights," recognizes the "unusual nature" of the Town and the fact that a large number of property owners only live there on a part-time basis, or, in some cases, not at all.

In addition, the stipulated facts appearing in the record establish the unique nature of the Town, including the fact that the majority of property is owned by non-residents and a far greater percentage of property tax is collected from them.

In our view, the Town had a rational basis for enfranchising non-resident property owners. Granting non-residents the right to vote ensures their participation in the community, including a right to determine the expenditure of the tax monies paid into the Town. *See May v. Town of Mountain Village, supra; see also Spahos v. Mayor & Councilmen of Savannah Beach,* 207 F.Supp. 688 (S.D.Ga.1962), *aff'd per curiam,* 371 U.S. 206, 83 S.Ct. 304, 9 L.Ed.2d 269 (1962)(finding rational basis for granting summer residents of town right to vote in local elections); *Snead v. City of Albuquerque,* 663 F.Supp. 1084 (D.N.M.1987), *aff'd,* 841 F.2d 1131, *cert. denied,* 485 U.S. 1009, 108 S.Ct. 1475, 99 L.Ed.2d 704 (1988)(municipality may allow non-resident property owners to vote in bond election if rational basis exists for finding

that they are affected by issue subject to vote).

Therefore, we hold that the Charter provision granting the right to vote to non-resident property owners does not violate plaintiffs' right to equal protection under Colo. Const. art. II, § 25.

## II.

■ Plaintiffs next contend that Colo. Const. art. XX does not expressly delegate the authority to decide voter qualifications to home rule municipalities and that, therefore, the Town was without authority to grant voting rights to non-resident property owners. We do not agree.

Colo. Const. art. XX, § 6, entitled "Home rule for cities and towns," provides in pertinent part as follows:

> The people of each city or town of this state ... are hereby vested with, and they shall always have ... all other powers necessary, requisite or proper for the government and administration of its local and municipal matters, including power to legislate upon, provide, regulate, conduct and control:
>
> . . . .
>
> d. All matters pertaining to municipal elections in such city or town, and to electoral votes therein on measures submitted under the charter or ordinances thereof, including the calling or notice and the date of such election or vote, the registration of voters, nominations, nomination and election systems, judges and clerks of election, the form of ballots, balloting, challenging, canvassing, certifying the result, securing the purity of elections, guarding against abuses of the elective franchise, and tending to make such elections or electoral votes non-partisan in character . . . .

Despite the language of this article, plaintiffs argue that *Mauff v. People ex rel. Clay,* 52 Colo. 562, 123 P. 101 (1912) compels the conclusion that home rule municipalities may not determine voter qualifications. However, Colo. Const. art. XX, § 6, was amended after the *Mauff* decision in response to the court's holding in that case, and as amended it su-

persedes that decision. We disagree with plaintiffs that *Mauff* can be construed to be the law in the area of home rule municipal voter qualifications.

As stated in *People ex rel. Tate v. Prevost,* 55 Colo. 199, 215, 134 P. 129, 134 (1913):

> Whatever may have been the law or the status of municipal elections before the amendment [of art. XX], their status now, by the adoption of that amendment, is fixed by legislative declaration of the people as *local and municipal matters.* The Home Rule Amendment says that the charter shall extend to all *local and municipal matters,* and that the people may legislate concerning those matters, and enumerates specifically some of the matters which are regarded as local and municipal, among which are all matters pertaining to municipal elections . . . . (emphasis added)

*See also Denver v. Mountain States Telephone & Telegraph Co.,* 67 Colo. 225, 184 P. 604 (1919), *error dismissed,* 251 U.S. 545, 40 S.Ct. 219, 64 L.Ed. 407 (1920)(amendment of Colo. Const. art. XX was expression of citizens' dissatisfaction with supreme court's restrictions upon powers of cities); *Hoper v. City & County of Denver,* 173 Colo. 390, 479 P.2d 967 (1971)(discussing history of home rule amendment).

> Colo. Const. art. XX, § 6, further reads:
>
> It is the intention of this article to grant and confirm to the people of all municipalities coming within its provisions the full right of self-government in both local and municipal matters and *the enumeration herein of certain powers shall not be construed to deny to such cities and towns, and to the people thereof, any right or power essential or proper to the full exercise of such right.* (emphasis added)

Thus, despite the fact that this provision does not expressly state that the right to determine voter qualifications is granted to home rule municipalities, the balance of the language of that section regarding the effect of the enumeration of powers provides a basis for so inferring.

Despite plaintiffs' argument to the contrary, the qualification of voters in local and municipal elections is a matter of local, not statewide, concern. *See People ex rel. Tate v. Prevost, supra* (all matters pertaining to municipal elections are declared local and municipal matters by the people through Colo. Const. art. XX). Plaintiffs have not demonstrated how the qualification of voters for purely local elections becomes a matter of statewide concern. Indeed, such argument contravenes the intent of Colo. Const. art. XX to allow localities to govern themselves. *See People ex Rel. Tate v. Prevost, supra.*

## III.

Plaintiffs also contend that Colo. Const. art. VII, § 1, and other provisions of Colorado law prohibit the extension of the voting franchise to non-residents. Again, we disagree.

## A.

Plaintiffs' first assertion in this regard is that Colo. Const. art. VII, § 1, sets the qualifications for voting in the state and, because the Charter provision "waives" one of these requirements, it must be declared invalid. We do not agree.

The cited constitutional provision entitled "Qualifications of elector," provides as follows:

> Every citizen of the United States who has attained the age of eighteen years, has resided in this state not less than one year next preceding the election at which he offers to vote and in the county, city, town, ward, or precinct such time as may be prescribed by law, and has been duly registered as a voter if required by law shall be qualified to vote at all elections; except that the general assembly may by law extend to citizens of the United States who have resided in this state less than one year the right to vote for presidential and vice-presidential electors.

■ The district court held that this provision "is not the exclusive means to qualify voters for local and municipal elections." We agree with the district court.

Any person meeting the requirements set forth in Colo. Const. art. VII is allowed to

vote at all elections in this state, and a home rule municipality such as the Town could not deny that right. However, nothing in that provision prohibits a home rule municipality from exercising its powers under Colo. Const. art. XX, § 6, to *expand* the franchise to non-resident property owners. Therefore, the Charter provision does not violate Colo. Const. art. VII.

### B.

Plaintiffs next assert that the Municipal Home Rule Act, § 31–2–201, et seq., C.R.S. 1998, requires residence as a qualification for voting in local elections and that, therefore, home rule municipalities may not qualify non-residents. We disagree.

The Municipal Election Code provides at § 31–10–1539(2), C.R.S.1998: "This article shall not apply to cities, towns, or cities and counties having home rule, but any such city, town, or city and county may adopt all or any part of this article by reference." In Mountain Village Charter § 2.2, the Town adopted the Municipal Election Code, but noted that elections shall be governed by the Code "[e]xcept as may be otherwise provided in this Charter."

Sections 31–2–210 & 31–2–220, C.R.S. 1998, the provisions here cited by plaintiff as restricting "registered electors" to residents, deal with the procedures to be followed in adopting, amending, or repealing a municipal home rule charter. They are not directly applicable to local elections in which the charter, as it does here, provides voting rights for non-resident property owners.

Section 31–2–211(1), C.R.S.1998, states: "Except as otherwise specifically provided, all elections held pursuant to this part 2 shall be conducted as nearly as practicable in conformity with the provisions of the 'Colorado Municipal Election Code of 1965.'"

The Charter provision at issue here "otherwise specifically provides" for non-resident voting in local elections. *Cf. Cook v. City of Delta,* 100 Colo. 7, 64 P.2d 1257 (1937) (provision of home rule charter that state law should govern all municipal elections "except as otherwise provided" held not to require city to follow all proceedings outlined by statute for submitting initiated measure); *City of Montrose v. Niles,* 124 Colo. 535, 238 P.2d 875 (1951)(because of charter provision requiring that state law be followed "except as otherwise provided," in absence of provision for conduct of municipal elections, state law applied in determining voter qualifications).

Thus, we hold that the Charter provision supersedes contrary provisions of the Municipal Election Code as it pertains to the conduct of local elections other than the adoption, amendment, or repeal of the Charter itself. *See also* Colo. Const. art. XX, § 9.

### C.

Plaintiffs' last assertion is that there is a distinction between regular elections and special district elections, and that special district elections are the only instance in which non-resident voters may be qualified to vote. We disagree.

The General Assembly has extended voting rights to non-residents in special district elections. *See Chesser v. Buchanan,* 193 Colo. 471, 568 P.2d 39 (1977); *People ex rel. Shaklee v. Milan,* 89 Colo. 556, 5 P.2d 249 (1931).

Plaintiffs argue that special districts are quasi-governmental entities with special purposes relating to land ownership and supported by revenues related to such ownership and, therefore, not true governmental entities. Plaintiffs thus urge that there is a "bright line" distinction between general elections and special district elections that makes the extension of the voting franchise to non-residents acceptable in the latter case but not in the former.

We are not persuaded that the enfranchisement of non-residents in special district elections would pass constitutional muster, while enfranchisement by home rule municipalities would not. *Cf. Burks v. City of Lafayette,* 142 Colo. 61, 349 P.2d 692 (1960)(home rule city may within its sphere exercise as much legislative power as General Assembly; legislative expansion of referendum power would support home rule city's expansion of that power through its charter).

Thus, if the General Assembly may enfranchise non-residents under its legislative powers for special district elections, a home rule city may do the same under its charter for the purposes of local and municipal elections.

Therefore, we reject plaintiff's argument that the expansion of the voting franchise to non-residents should be limited to special district elections.

The summary judgment granted by the district court in favor of the Town is affirmed.

Judge RULAND and Judge CASEBOLT concur.