This opinion addresses how the rules in the initiative apply to elections in home rule counties and municipalities. This opinion is issued at the request of Colorado Secretary of State Donetta Davidson.
 QUESTIONS PRESENTED AND CONCLUSIONS
Question 1: Do Article XXVIII and the FCPA apply to every home rule county and municipality, regardless of whether the county or municipality has enacted ordinances or charter provisions covering similar subject matter?
Answer 1: In election matters of local concern, neither Article XXVIII
of the Colorado Constitution nor the FCPA applies to home rule counties and municipalities which have charters or ordinances that already address the matters covered by Article XXVIII and the statute.
In addition, Article XXVIII contains only a few provisions that affect local elections, including those that address the definition of a candidate, small donor committee contributions and disclosure. For that reason, even local elections that remain subject to Article XXVIII will not be greatly affected.
Question 2: If a home rule county or municipality adopts ordinance or charter provisions more stringent than Article XXVIII and the FCPA, do those more stringent provisions apply to county or municipal elections in accord with Section 1-45-116, C.R.S.?
Answer 2: The charter or ordinances of a home rule entity that address campaign financing and reporting for candidates for office at the county or municipal level control within that home rule entity whether or not they are more stringent than constitutional or statutory rules. This is because local election matters are a power reserved in the Colorado Constitution to home rule entities.
Question 3: Does the prohibition in Section 3(4)(a) of Article XXVIII, making it "unlawful for a corporation or labor organization to make contributions to a candidate committee or political party, and to make expenditures expressly advocating the election or defeat of a candidate," apply to candidates for election in home rule municipalities and counties?
Answer 3: The prohibition in Section 3(4)(a) of Article XXVIII does not apply to candidates for local election in home rule or statutory localities.
 BACKGROUND
On November 5, 2002, the citizens of Colorado approved a ballot initiative titled "Amendment 27: Campaign Finance." This initiative amends the Colorado Constitution by the addition of a new provision, hereinafter referred to as "Article XXVIII." It also amends part of Colorado's Fair Campaign Practices Act, § 1-45-101 et seq., C.R.S. (2002) ("FCPA"), by placing limits on the amounts and types of contributions permitted during an election, among other changes.
The reader is cautioned that this opinion does not analyze the specific laws of a particular home rule county or municipality, and it is limited in this respect. A separate legal analysis is necessary to determine if a portion of a particular charter or ordinance conflicts with one or more specific provisions of Article XXVIII of the Colorado Constitution or the FPCA.
Finally, the broader context for this opinion is important. Article XXVIII contains relatively few rules that address local elections. The conclusion reached below — that these rules will apply only in local elections in statutory counties, cities and towns — will therefore have a relatively limited impact upon those local elections. For the most part, the campaign finance rules for all local elections that existed prior to the adoption of Article XXVIII will continue unchanged.
 LEGAL ANALYSIS
The Secretary of State's inquiry requires consideration and interpretation of several sections of Colorado's constitution and statutes. These include Section 6 of Article XX of the constitution, Article XXVIII of the constitution, and a portion of the FCPA, §1-45-116, C.R.S. (2002).
The legal analysis that follows begins with a discussion of Article XX, the constitutional grant of home rule authorities for cities and towns. It considers the powers granted to home rule cities and towns, and concludes that these home rule entities generally regulate their local elections free from outside rules, including those in Article XXVIII.
The analysis then describes the home rule authorities granted to counties in the constitution, authorities that are more limited by statutes enacted by the General Assembly. Nevertheless, the analysis concludes with regard to local elections that the breadth of home rule powers of counties is similar to the breadth of home rule powers of cities and towns. Article XXVIII does not expressly or implicitly repeal the constitution's home rule provisions.
Finally, the discussion addresses the text of Article XXVIII to conclude that rules about contributions in local elections by corporations and labor organizations do not apply to local elections.
I. The Colorado Constitution Confers Upon Cities and Towns Home Rule Powers to Regulate Local Elections.
The legal provision at the heart of this opinion is section 6 of Article XX of the Colorado Constitution. This section describes the powers granted to Colorado's home rule cities and towns. It declares:
The people of each city or town of this state, having a population of two thousand inhabitants . . ., are hereby vested with, and they shall always have, power to make, amend, add to or replace the charter of said city or town, which shall be its organic law and extend to all its local and municipal matters.
Such charter and the ordinances made pursuant thereto in such matters shall supersede within the territorial limits and other jurisdiction of said city or town any law of the state in conflict therewith.
[After the charter is approved,] the citizens thereof, shall have the powers set out in sections 1, 4 and 5 of this article, and all other powers necessary, requisite or proper for the government and administration of its local and municipal matters, including power to legislate upon, provide, regulate, conduct and control:
a. The creation and terms of municipal officers, agencies and employment; the definition, regulation and alteration of the powers, duties, qualifications and terms or tenure of all municipal officers, agents and employees;
* * *
d. All matters pertaining to municipal elections in such city or town, and to electoral votes therein on measures submitted under the charter or ordinances thereof, including the calling or notice and the date of such election or vote, the registration of voters, nominations, nomination and election systems, judges and clerks of election, the form of ballots, balloting, challenging, canvassing, certifying the result, securing the purity of elections, guarding against abuses of the elective franchise, and tending to make such elections . . . non-partisan[.]
* * *
COLO. CONST. art. XX, § 6 (emphasis added).
Article XX describes its purpose clearly. It is intended to grant important rights of self- government to home rule entities.
It is the intention of this article to grant and confirm to the people of all municipalities coming within its provisions the full right of self- government in both local and municipal matters and the enumeration herein of certain powers shall not be construed to deny such cities and towns, and to the people thereof, any right or power essential or proper to the full exercise of such right.
COLO. CONST. art. XX, § 6. The scope of these powers is emphasized by the general grant to home rule entities of "all other powers necessary, requisite or proper for the government and administration of its local and municipal matters[.]" Id.
Home rule cities and towns remain responsible for compliance with state law where they have not otherwise provided a rule by charter or ordinance. The constitution provides:
The statutes of the state of Colorado, so far as applicable, shall continue to apply to such cities and towns, except insofar as superseded by the charters of such cities and towns or by ordinance passed pursuant to such charters.
Id. Finally, the constitution states how a city or town avails itself of the powers described here and in other sections of Article XX. The city or town creates a charter that outlines the structure and powers it wishes to adopt, and then has the charter certified by the Secretary of State. Id.
The history of Article XX. The history of Article XX confirms its substantial application in practice. The Colorado Supreme Court described that history in a case decided thirty years ago. The discussion that follows is drawn from that case, entitled Hoper v. City and County of Denver, 173 Colo. 390, 479 P.2d 967 (1971).
Article XX was added to the Colorado Constitution in 1902, in part to establish Denver as a consolidated municipal government with home rule powers. Hoper, 173 Colo. at 396, 479 P.2d at 970. During the following decade, considerable controversy arose over the construction of the amendment. Id., citing Denver v. Mountain States Telephone 
Telegraph Co., 67 Colo. 225, 184 P. 604 (1919).
The controversy sprang from a narrow judicial determination of local or municipal matters within the control of a home rule city. Id. The Colorado Supreme Court announced the narrow interpretation of home rule powers in Mauff v. People, 52 Colo. 562, 123 P. 101 (1912). It held that the City and County of Denver had only limited powers under Article XX to control the conduct of municipal elections, and that the Colorado Constitution and general laws concerning the regulation, control and management of elections were fully applicable to Denver municipal elections. Hoper, 173 Colo. at 396, 479 P.2d at 970.
In response, the people initiated and adopted an amendment to Article XX, § 6 later that year, known as the "home rule amendment". The Colorado Supreme Court described the rationale and intended effect of this amendment as follows:
It is a part of the history of the state that the people were disappointed, not to say more, at the restrictions put upon the powers of cities by this court's interpretations of article 20, and that the home rule amendment was the expression of that feeling.
Id., citing Denver v. Mountain States Telephone Telegraph Co, supra, 184 P. 604.
The historical text of the home rule provision, still found in today's constitution, plainly expresses its intent to allow home rule control of local election matters. It says, "[a]ll matters pertaining to municipal elections in such city or town, and to electoral votes therein on measures submitted under the charter or ordinances thereof. . . ." are of local concern. COLO. CONST. art. XX, § 6.d.
The courts have recognized the significance of these provisions. In general, the powers listed in Article XX are considered to be matters of purely local and municipal concern. Four- County Metropolitan Capitol Improvement Dist. v. Board of County Comm'nrs, 149 Colo. 284, 369 P.2d 67
(1962); but see Fraternal Order of Police, Colorado Lodge No. 27 v. City and County of Denver, 926 P.2d 582, 588-89 (Colo. 1996) (specific enumeration in the constitution is not dispositive, only a factor). Also, the term "municipal election" has been broadly construed. May v. Town of Mountain Village, 969 P.2d 790 (Colo.App. 1998) (approving home rule town's extension of voting franchise to non-residents); Hoper,173 Colo. at 396, 479 P.2d at 970.
Finally, the current practice in home rule towns and cities in Colorado confirms the common understanding that these entities regulate local elections. The charters and codes of home rule entities contain substantial provisions regulating that subject. See e.g., § 15-31 et seq., Revised Municipal Code of the City and County of Denver (1991).[1]
Against this historical and practical backdrop, I recognize that Article XX vests home rule cities and towns with authority to regulate local elections. This authority includes rules regarding contribution limits, reporting requirements and the like.
II. Colorado's Home Rule Counties Possess Powers to Regulate County Elections.
The powers of home rule counties differ significantly from the powers of home rule cities and towns. Home rule counties are subject to separate constitutional limitations, and they are significantly more limited by Colorado's General Assembly, through the enactment of state statutes. Nevertheless, for the reasons that follow I conclude that home rule counties also are empowered to decide upon their own election rules, and that home rule county powers in this regard are similar in scope to those of home rule cities and towns.
Home rule county powers and limitations. Home rule counties are governed by Article XIV, Section 16 of the Colorado Constitution. That section provides home rule counties with rights of self-governance that are limited by state statute:
[T]he registered electors of each county of the state are hereby vested with the power to adopt a home rule charter establishing the organization and structure of county government consistent with this article and statutes enacted pursuant hereto.
COLO. CONST. art. XIV, § 16(1). This provision allows a county to adopt a charter that sets a different organization and structure for county government than the organization and structure set out in detail in the rest of Article XIV.
The General Assembly exercises substantial control over home rule counties. The constitution provides:
A home rule county shall provide all mandatory county functions, services, and facilities and shall exercise all mandatory powers as may be required by statute.
COLO. CONST. art. XIV, § 16(3). Similarly, the General Assembly can provide by statute limits to the permissive functions, services, facilities and powers that can be exercised by home rule counties.
A home rule county shall be empowered to provide such permissive functions, services, and facilities and to exercise such permissive powers as may be authorized by statute applicable to all home rule counties, except as may be otherwise prohibited or limited by charter or this constitution.
COLO. CONST. art. XIV, § 16(4). The General Assembly has acted in these areas. See § 30-35- 201, 202, C.R.S. (various powers of home rule counties).
Home rule counties and local elections. Despite the more limited powers of home rule counties generally, the structure of the constitution in Article XVI confirms home rule county control of local elections. That structure shows that home rule counties have the power to adopt charter rules to regulate the aspects of local elections that are also addressed in Article XXVIII. It therefore supports the conclusion that home rule counties, like home rule cities and towns, are not subject to Article XXVIII in local elections.
Article XIV of the constitution sets out detailed instructions concerning the organization and election of county officials. Specific guidelines for how county commissioners are elected and their terms in office are contained in Article XIV, § 6. Rules for how county clerks, coroners, treasurers, assessors, attorneys, and surveyors are elected, appointed and serve are set out in detail in Article XIV, § 8. The qualifications for sheriffs are discussed in Article XIV, § 9, and how vacancies are filled is described in Article XIV, § 10. The General Assembly provides for election or appointment of other county officers in Article XIV, § 12. The compensation and fees of county officers is detailed in Article XIV, § 15.
Significantly, however, home rule counties can substitute their own rules in every one of these areas. Article XIV, § 16(5) says:
The provisions of sections 6, 8, 9, 10, 12, and 15 of article XIV of this constitution shall apply to counties adopting a home rule charter only to such extent as may be provided in said charter.
COLO. CONST. art. XIV, § 16(5).[2]
This constitutional structure supports the inference that home rule counties can generally choose in their charters the rules they desire for the election of local officers. I conclude on this basis that home rule counties are empowered to regulate county elections. They have, through their charters, the ability to address the same aspects of election campaigns addressed in Article XXVIII.[3]
III. The Campaign Finance Reforms in Article XXVIII Do Not Control Local Elections within the Home Rule Entities That Regulate Elections.
It is left to examine whether the few constitutional campaign finance reforms in Article XXVIII that affect local elections are intended by the People to displace the constitutional election powers of home rule cities, towns and counties just described. I conclude that Amendment XXVIII does not displace home rule election powers, for the reasons set forth below.
The new campaign finance provisions in Article XXVIII are set forth in two parts. The first, a detailed and lengthy set of provisions, announces constitutional rules governing the financing of elections. The second, a much smaller section, displaces a part of the existing statutory mechanism regulating campaign finance in Colorado, the Fair Campaign Practices Act, § 1-45-101 et seq., C.R.S. (2002).
The constitutional text of Article XXVIII does not uniformly refer to state or to local elections. Rather, most portions address state elections alone, while others concern state, local and other elections, and still others are silent on this point. It is apparent that these choices are made carefully in the text of Article XXVIII. It follows directly from this fact that Article XXVIII does not intend to preempt all election rules within the state that concern the subject matter it addresses.
A few portions of Article XXVIII apply by their terms to local elections. A "candidate" is defined to include "any person who seeks nomination or election to any state or local public office that is to be voted on in this state[.]" See COLO. CONST. art. XXVIII, § 2(2). In addition, aggregate individual contribution rules apply to local elections:
No political party shall accept aggregate contributions from any person, other than a small donor committee as described in paragraph (b) of this subsection (3), that exceed three thousand dollars per year at the state, county, district and local level combined. . . .
COLO. CONST. art. XXVIII, § 3(3)(a). Finally, Article XXVIII makes a separate reference to disclosure requirements in local elections:
The disclosure requirements relevant to candidate committees, political committees, issue committees, and political parties, that are currently set forth in section 1-45-108, C.R.S., or any successor section, shall be extended to include small donor committees. . . . For purposes of this section and 1-45-108, C.R.S., . . ., a political party shall be treated as separate entities at the state, county, district, and local levels[.]
COLO. CONST. art. XXVIII, § 7.
These references to local elections raise an important home rule question. Are the limited rules in Article XXVIII that regulate local elections intended to govern only local elections in entities that do not exercise home rule powers, or are they intended to supplant the home rule powers over elections discussed in detail above? For the reasons that follow, I conclude that Article XVIII does not supplant the home rule powers of cities, towns and counties to regulate elections.
The silence of Article XXVIII on the home rule issue is convincing. The entire lengthy and detailed provision contains no statement that it governs home rule entities. Against an historical backdrop of home rule government in Colorado for more than seventy years, that omission is telling. See City of Englewood v. City County of Denver,123 Colo. 290, 301, 229 P.2d 667, 673 (1951) (citing "universal rule that repeals by implication are not favored"), overruled on other grounds by Board of County Comm'rs of Arapahoe County v. Denver Bd. of Water Comm'rs, 718 P.2d 235 (Colo. 1986); accord Showpiece Homes Corp. v. Assurance Co. of Am., 38 P.3d 47, 53 (Colo. 2001).
When Article XXVIII does expressly address conflicting governmental rules for elections, it does not mention the role of home rule entities. It refers only to state statute, the principal mechanism used to control local entities that have not chosen home rule. Section 11 of Article XXVIII simply says, "[a]ny provisions in the statutes of this state in conflict or inconsistent with this article are hereby declared to be inapplicable. . . ." If Article XXVIII is to govern home rule authorities, charters and ordinances surely would be mentioned. Compare COLO. CONST. art. X, § 20 (amendment written to "supercede conflicting state constitutional, state statutory, charter, or other state or local government provisions").
Moreover, though five other provisions of the Fair Campaign Practices Act are repealed by Article XXVIII, the portion of the FCPA recognizing the power of home rule counties and municipalities to regulate elections intentionally is left untouched by the constitutional amendment. The provision left intact, Section 116, says:
Any home rule county or municipality may adopt ordinances or charter provisions with respect to its local elections, which are more stringent than any of the provisions contained in this Act. . . .
§ 1-45-116, C.R.S. (2002); see also COLO. CONST. art. XXVIII, §12 (affirming § 116 is not repealed); Gosliner v. Denver Election Comm'n, 191 Colo. 328, 552 P.2d 1010 (1976) (public meeting law could not divest a home rule city of its constitutionally granted plenary power to deal with municipal elections). This choice demonstrates an intention to leave the powers of home rule entities intact.
Additionally, the legislative history of the initiated campaign finance measure does not show an intent to supercede home rule powers in the contribution limits area. Neither the ballot information booklet mailed to the voters nor the proponents of Amendment 27 stated that the Amendment was intended to dismantle home rule entities' limitations upon contributions to local candidates. See Bedford v. Sinclair, 112 Colo. 176,182, 147 P.2d 486, 489 (1944) (recognizing that "the evident contemporary interpretation of those actively promoting the Amendment should be afforded considerable weight"); see also Carrara Place, Ltd. v. Arapahoe County Bd. Of Equalization, 761 P.2d 197, 203 (Colo. 1988).
Finally, Article XXVIII and the home rule provisions of the constitution can be read in harmony. This is accomplished if the limited local election rules in Article XXVIII are read to apply only to cities, towns and counties that do not exercise home rule authorities. They have force in that regard, but the home rule provisions of Articles XX and XIV are left unimpaired, as well. Whenever possible, courts strive to reconcile constitutional or statutory provisions without conflict. See e.g., In re Great Outdoors Colorado Trust Fund, 913 P.2d 533, 538 (Colo. 1996).
For all these reasons, I conclude that Article XXVIII of the constitution does not supplant the home rule authorities of Articles XX and XIV of the constitution in the area of campaign finance. Rather, the campaign finance choices made in the charters and ordinances of home rule entities survive separately from the rules contained in Article XXVIII.
IV. Article XXVIII Does Not Impose Upon Home Rule or Other Local Entities Its Limitations on Contributions from Labor Organizations and Corporations
It follows that the constitutional amendment does not impose limits on contributions by corporations and labor organizations upon home rule or other local entities. The text of the amendment provides, in relevant part:
It shall be unlawful for a corporation or labor organization to make contributions to a candidate committee or a political party, and to make expenditures expressly advocating the election or defeat of a candidate; except that a corporation or labor organization may establish a political committee or a small donor committee which may accept contributions or dues from employees, officeholders, shareholders, or members.
COLO. CONST. art. XXVIII, § 3(4)(a). Nothing in the provision states whether its limitations apply to home rule entities.
The legislative history of the amendment says that it is intended to apply to elections for statewide officials. The "Blue Book" argument in support of the initiative specifically describes only statewide candidates as covered by the amendment:
Although corporations and labor unions cannot vote, spending by such entities influences the political process. Under this proposal, these organizations will have to raise money from employees, shareholders, and members who contribute to small donor and political committees rather than directly funding political activities. Corporations and labor unions are already banned from directly contributing to federal candidates; this proposal simply extends the ban to state races.
Legislative Council of the Colo. Gen. Assembly, An Analysis of 2002 Ballot Proposals, Research Pub. No. 502-10 at 6 (2002) (emphasis added); see also Carrara Place, Ltd., 761 P.2d at 203 ("legislative council's interpretation, while not binding, provides important insight into the electorate's understanding of the amendment when it was passed"). There is no related discussion or mention of municipal elections, and the reference to state elections cannot be extended beyond its clear language. Likewise, the lack of reference to home rule charter or ordinances is instructive. See supra p. 5 and Hoper, 173 Colo. at 395,479 P.2d at 969 (noting that in the "absence of a clear statement to the effect that municipalities are limited, such meaning cannot and should not be inferred").
 CONCLUSION
For the reasons described, Article XXVIII does not apply to home rule counties and municipalities which have charters or ordinances that already address the matters covered in Article XXVIII. Also, the prohibition in Section 3(4)(a) of Article XXVIII, limiting corporate or labor organization contributions, does not apply to candidates for local offices.
[1] Although home rule municipalities retain the power to specify their own election procedures, many municipalities adopt the state's municipal election code by reference. Compare COLO. CONST. art XX, § 6(a) with § 31-10-101, C.R.S. (2002); see also Englewood Police Benefit Ass'n v. City of Englewood, 811 P.2d 464 (Colo.App. 1990).
[2] Enabling legislation thus further defines how county commissioners organize and set up a charter. See § 30-11-501 et seq., C.R.S. (2002).
[3] The Municipal Election Code recognizes that a home rule "city and county" can opt, like home rule cities and towns, to regulate elections. It provides: "This article shall not apply to cities, towns, or cities and counties having home rule, but any such city, town, or city and county may adopt all or any part of this article by reference." § 31- 10-1539, C.R.S. (2002); see e.g., May, 969 P.2d at 795 (in its charter, the Town adopted the Municipal Election Code, but noted that elections shall be governed by the Code "[e]xcept as may be otherwise provided in this Charter"); In Re Ballot Title and Submission Clause, and Summary for 1997-1998 No. 95, 960 P.2d 1204, 1209 (Colo. 1998) (recognizing that the power of home rule cities is not derived from the General Assembly, but is an independent constitutional power and rejecting initiative that would deprive home rule cities of this power).